## George S. McReynolds

*v.*

## The People of the State of Illinois.

*Opinion filed October 23, 1907—Rehearing denied Dec. 11, 1907.*

1. Statutes—*when rule of ejusdem generis will not be applied.* The rule of *ejusdem generis* does not apply, in construing a statute, where the specific words signify subjects greatly different from one another.

2. Warehousemen—*section 124 of Criminal Code, relating to warehouse receipts, construed.* The words "wharf or place of storage, or in any warehouse, mill, store or other building," used in section 124 of division 1 of the Criminal Code with reference to fraudulent warehouse receipts, include all buildings, of every kind and character, in which goods, wares and merchandise are or may be stored, whether for hire or otherwise. (*Sykes* v. *People*, 127 Ill. 117, and *Mayer* v. *Springer*, 192 id. 270, distinguished.)

3. Same—*effect where owner of grain makes receipt to himself.* A receipt made by the owner of grain to himself for grain stored in his own building is without legal effect until transferred by him to another person for value, in which case it must be regarded as "issued," within the meaning of section 124 of division 1 of the Criminal Code, and as between the maker of the receipt and the transferee is then of legal effect.

4. Same—*when warehouse receipt is, in effect, a chattel mortgage.* A written receipt made by the owner of grain to himself for grain stored in his own building and transferred by him to a bank as collateral security, is, in effect, as between the owner and the bank, an unrecorded and unacknowledged chattel mortgage, notwithstanding it gives the owner the right to mingle the grain with other of the same grade, and is within the meaning of sections 124 and 125 of division 1 of the Criminal Code.

5. Same—*when a party is guilty of violating statute relating to warehouse receipts.* An owner of grain stored in his own building who makes a receipt to himself therefor and transfers the same to another person for value, and who thereafter removes the grain, or any part thereof, without the consent of the holder of the receipt, there being no necessity therefor to save the property from loss or damage, is guilty of a violation of section 125 of division 1 of the Criminal Code.

6. Same—*fact that party had other grain in cars is no defense.* If one who has issued a warehouse receipt for grain, improperly removes the grain, or a part thereof, from the warehouse without the consent of the holder of the receipt, he is guilty of a violation of section 125 of division 1 of the Criminal Code; and the fact that there was on the following day, in cars upon tracks which were a part of the warehouse property, grain of sufficient quantity to replace that removed is no defense.

7. Indictment—*what is not a variance from indictment.* Under an indictment charging a violation of section 125 of division 1 of the Criminal Code, and alleging that the defendant had removed all of the corn evidenced in the receipt issued by him, "to-wit, all of the said 4670 bushels and forty pounds," it is proper to prove the removal of all or any part of the corn, and the fact that the evidence shows that some 3000 bushels were not removed does not constitute a variance.

Cartwright and Vickers, JJ., dissenting.

Writ of Error to the Criminal Court of Cook county; the Hon. J. W. Mack, Judge, presiding.

William J Hynes, Colin C. H. Fyffe, and Cornelius Lynde, for plaintiff in error:

The elevator of plaintiff in error was not a public warehouse of any kind, nor was plaintiff in error a public warehouseman, nor conducting any similar business of storing, for hire, the goods of others. All the grain in the elevator belonged to plaintiff in error. No grain was deposited or stored with him by any person whatsoever. Sections 124 and 125 of the Criminal Code, under which the indictment was drawn, run only against warehousemen, wharfingers and other persons who conduct the business of storing the goods of others for hire. The person whose business is sought to be regulated by the statute is one who is a bailee, for hire, of the goods upon which the receipt or other written evidence of delivery or deposit has been issued. There must be a real owner other than the bailee, hence there must be a *bona fide* bailment. It is the title of this owner of the goods, and his right to transfer that title according

to commercial usage, and the process of so transferring that title, which the statute is intended to protect. The purpose of the statute may be shown by the history and growth of the law and legislation on this subject. *Lickbarrow* v. *Mason,* I Smith's L. C. 895; *Burton* v. *Curyea,* 40 Ill. 320; *Hannah* v. *People,* 198 id. 77.

The phraseology of the statute shows conclusively that it applies to a bailment transaction, to a warehouseman or similar bailee, and to a receipt which is capable, in law, of representing and passing the title to the property in the goods therein described. *Leishman* v. *Whitely,* 111 Cal. 378; *Bank* v. *Jagode,* 186 Pa. St. 556; *Bucher* v. *Commonwealth,* 103 id. 528; *State* v. *Kirby,* 115 Mo. 440; *Bank* v. *Whitehead,* 149 Ind. 560; *Geilfuss* v. *Corrigan,* 95 Wis. 652; *People* v. *Bradley,* 4 Parker's Crim. 247; *Selden* v. *Trust Co.* 94 U. S. 422.

Where an enumeration of specific things is followed by general words or phrases, the latter are held to refer to things of the same kind as those specified. By the enumeration used, the statute refers only to those engaged in a storage or warehouse business. *Gundling* v. *Chicago,* 176 Ill. 340; *White* v. *Wagar,* 185 id. 195; *Ambler* v. *Whipple,* 139 id. 313; *Bucher* v. *Commonwealth,* 103 Pa. St. 528: *Bank* v. *Jagode,* 186 id. 556.

Penal statutes similar to ours and identical in purpose have been construed according to the above interpretation in other jurisdictions,—that is to say, so as not to apply to a case where the defendant was not a warehouseman and was the owner of the goods on which the receipt issued. *Bucher* v. *Commonwealth,* 103 Pa. St. 528; *Bank* v. *Jagode,* 186 id. 556; *Bank* v. *Whitehead,* 149 Ind. 560; *Geilfuss* v. *Corrigan,* 95 Wis. 652; *Bryant* v. *State,* 63 Md. 66; *Bank* v. *Motter,* 97 id. 545.

There is no case in any State upholding a contrary construction. Receipts issued under circumstances similar to

those of the case at bar have invariably been held in civil cases to have no legal effect to represent the property in the goods therein described or to convey title to the goods. *Snydacker* v. *Blatchley,* 177 Ill. 506; *Trust Co.* v. *Trumbull,* 137 id. 146; *Trust Co.* v. *Wilson,* 198 U. S. 536; *Bank* v. *Whitehead,* 149 Ind. 56; *Geilfuss* v. *Corrigan,* 95 Wis. 652; *Bell Co.* v. *Glass Co.* 48 S. W. Rep. 440; *Bank* v. *Jagode,* 186 Pa. St. 556; *Ferguson* v. *Bank,* 77 Ky. 555; *Greenleaf* v. *Dows,* 8 Fed. Rep. 551.

At common law, in Illinois, title to unidentified portions of a mass of grain can only be conveyed by delivery of the grain. *Low* v. *Martin,* 18 Ill. 286; *Lonergan* v. *Stewart,* 55 id. 44; *Richardson* v. *Olmstead,* 74 id. 213.

By the Warehouse act alone, passed in accordance with article 13 of the constitution of Illinois, can title to an unidentified portion of grain in bulk be conveyed without delivery of the grain. *Richardson* v. *Olmstead,* 74 Ill. 213; *Bastress* v. *Chickering,* 28 Ill. App. 198; *Mayer* v. *Springer,* 192 Ill. 276; *Snydacker* v. *Blatchley,* 177 id. 506; *Hoffman* v. *Schoyer,* 143 id. 601; *Bank* v. *Langan,* 28 Ill. App. 408; *Bank* v. *McCrea,* 106 Ill. 281.

To create a valid pledge of personal property in Illinois a change of possession of the subject of the pledge from the pledgor to the pledgee is an absolute necessity. *Snydacker* v. *Blatchley,* 177 Ill. 506; *Belden* v. *Perkins,* 78 id. 402; *Borden* v. *Croak,* 131 id. 68; *Cooper* v. *Ray,* 47 id. 53; *Railroad Co.* v. *Phillips,* 60 id. 190; *Bank* v. *McCrea,* 106 id. 281; *Trust Co.* v. *Trumbull,* 137 id. 146.

W. H. STEAD, Attorney General, and JOHN J. HEALY, State's Attorney, (JAMES J. BARBOUR, of counsel,) for the People:

Sections 124 and 125 of the Criminal Code are plain and unequivocal in terms and were intended to apply to all persons in the possession or control of grain who should issue

receipts thereon and afterwards sell or remove the grain without the consent of the receipt holder. The words "whoever," "mill," "store," "other building," negative the claim that only warehouses and warehousemen were the objects which the statute designed to cover. So the words "other written evidence of the delivery or deposit of grain" give further evidence of an intention to punish fraud in any and all transactions not comprehended by statutes describing offenses of warehousemen concerning warehouses and warehouse receipts. *Town Council* v. *Pegg,* 63 S. C. 98; *Rafferty* v. *New Brunswick Co.* 18 N. J. L. 480; *Renshaw* v. *Missouri State Co.* 103 Mo. 595; *Lee* v. *Oil Co.* 7 N. Y. Sup. 426.

"Storehouse," as used in the Criminal Code, is broad enough to include a corn-crib used by a farmer for storing his own corn. *Metz* v. *State,* 46 Neb. 547.

The doctrine of *ejusdem generis* does not apply to the statute in this case, first, because the statute is so plain and unambiguous that there is no room for construction, and, consequently, the application of the rule; second, because the specific words "warehouse," "mill," "store," are words that exhaust the *genus,* and where this is true, general words, such as "other building," are not given a limited but their natural and wide meaning; and third, because to apply the doctrine would operate to deprive the words "other building" of all meaning, which is never permissible. Sutherland on Stat. Const. 278; 26 Am. & Eng. Ency. of Law, 608, 610; *Gillock* v. *People,* 171 Ill. 309; *Kincaid* v. *People,* 139 id. 213; *Webber* v. *Chicago,* 148 id. 313; *McKeon* v. *Wolf,* 77 Ill. App. 325.

Prosecution will lie even where the receipt evidences a pledge of one's own grain. *Sykes* v. *People,* 127 Ill. 117.

The title to separate portions of grain stored in mass is not lost because of the intermingling, and an actual delivery of grain is not necessary to the validity of such receipt or

contract, as between the parties. *Hoffman* v. *Schoyer,* 143
Ill. 598; *Mayer* v. *Springer,* 192 id. 276; *Kimberly* v.
*Patchin,* 19 N. Y. 330; Jones on Pledges, secs. 325, 326;
VanZile on Bailments, sec. 238; *Keiser* v. *Topping,* 72 Ill.
226; *Tuttle* v. *Robinson,* 78 id. 332; *Thorne* v. *Bank,* 37
Ohio St. 254; *Adams* v. *Bank,* 2 Fed. Rep. 174; *Bush* v.
*Storage Co.* 136 id. 918; *Bank* v. *Meadowcroft,* 95 Ill. 129.

Failure to prove the removal of all the corn mentioned
in the receipt is not a variance. *Commonwealth* v. *O'Brien,*
107 Mass. 208; *Sunney* v. *State,* 16 Miss. 576; *Anderson*
v. *State,* 2 Tex. App. 10; *State* v. *Johnson,* 3 Hill, 1; *State*
v. *Martin,* 82 N. C. 672; *Commonwealth* v. *O'Connell,* 94
Mass. 451; *Parsons* v. *State,* 2 Ind. 499.

Mr. JUSTICE SCOTT delivered the opinion of the court:

McReynolds was convicted of a violation of section 125
of chapter 38, Hurd's Revised Statutes of 1905, in the crimi-
nal court of Cook county, and sentenced to the penitentiary.
He has sued out a writ of error for the purpose of having
the record reviewed by this court.

That section of the statute refers to the section immedi-
ately preceding it, and the two read as follows:

"Sec. 124. Whoever fraudulently makes or utters any
receipt, or other written evidence of the delivery or deposit
of any grain, flour, pork, wool, salt, or other goods, wares
or merchandise, upon any wharf or place of storage, or in
any warehouse, mill, store or other building, when the quan-
tity specified therein has not in fact been delivered or de-
posited as stated in such receipt or other evidence of the de-
livery or deposit thereof, and is not, at the time of issuing
the same, still in store, and the property of the person to
whom or to whose agent the receipt is issued, or for the
whole or any part of which any other receipt is outstand-
ing, or uncanceled, shall be imprisoned in the penitentiary
not less than one nor more than ten years.

"Sec. 125. Whoever, having given any such receipt or written evidence of deposit or storage as is specified in the preceding section, or being in the possession or control of such property, shall sell, encumber, ship, transfer, or in any manner remove from the place of storage, or allow the same to be done, any such grain, flour, pork, wool, salt, or other goods, wares and merchandise, without the written consent of the holder of such receipt or other evidence of deposit or storage, except in cases of necessity for the purpose of saving such property from loss or damage by fire, flood or other accident, shall be imprisoned in the penitentiary not less than one nor more than ten years."

The indictment charges that McReynolds, on September 19, 1905, had in storage in a building commonly called a grain elevator, of which he was possessed, in Cook county, 4670 bushels and forty pounds of corn, and that he made a receipt and written evidence of the deposit of that corn in that elevator, which recited that the corn was subject only to the order of McReynolds thereon, and that on the 25th day of September, in the county of Cook, McReynolds delivered the document to the Corn Exchange National Bank of Chicago, a corporation, which thereupon became the holder thereof, and that thereafter, on January 18, 1906, without the written consent of the bank, which was still the holder of the document, McReynolds removed from said building "a certain large amount of said grain, * * * to-wit, all of the said 4670 bushels and forty pounds of said grain." By proper averment the exception in section 125, *supra,* was negatived. It is conceded that the averments of the indictment as they are above recited are in accordance with the facts, except it is contended that the corn was not all removed, but, on the contrary, that about 3000 bushels thereof remained in the elevator.

McReynolds was engaged in the grain business in Chicago, where he owned the elevator mentioned in the indictment. So far as appears from this record he used his

elevator exclusively for the purpose of handling grain owned by him, and did not receive therein, for any purpose, personal property owned by any person other than himself. The receipt or written evidence of deposit in question is as follows:

"*Elevator A.*

No. 2501.

MCREYNOLDS ELEVATOR COMPANY.
Lbs. 261560
Bush. 4670
Lbs. 40

"Received in store from cars, forty-six hundred seventy and 40lbs. bushels of corn three (3) yellow, subject only to the order hereon of McReynolds & Company and the surrender of this receipt and payment of charges.

"It is hereby agreed by the holder of this receipt that the grain herein mentioned may be stored with other grain of the same grade by inspection.

"This grain is subject to regular rates of storage, loss by fire or heating at owner's risk.        MCREYNOLDS ELEVATOR COMPANY,
H. T. Pardee, *Secretary.*"

So far as this suit is concerned, the names "McReynolds Elevator Company" and "McReynolds & Company" were mere trade names used by McReynolds. On the day of its date, McReynolds, in the name of "McReynolds & Co.," by endorsement written on the back of the receipt, assigned the same to the bank, and delivered it, together with a number of other like receipts similarly endorsed, to the said bank to secure his note for $100,000. On January 19, 1906, the bank held receipts of this character, including the one involved in this suit, to secure said indebtedness, for corn in the said elevator to the amount of 75,854 bushels. On that day bankruptcy proceedings were instituted against McReynolds, and it was then found that there were but 2992 bushels of corn in the elevator. It is not clear whether this corn was of as good a grade as No. 3 yellow. The corn represented by the receipt described in the indictment was owned by McReynolds and was in his elevator at the time the receipt was written and transferred to the bank.

Assignments of error which question the action of the court in overruling a motion to quash each of the counts

of the indictment and in passing on instructions necessitate a construction of the sections of the statute above set out.

Plaintiff in error contends in this connection, (1) "the statute, sections 124 and 125 of the Criminal Code, under which the indictment was drawn, runs only against warehousemen, wharfingers and other persons who conduct the business of storing the goods of others for hire;" (2) the statute does not cover the case of one who utters a receipt or other written evidence of the deposit of his own property in his own building, but only applies where there has been an actual bailment; (3) the receipt has "no legal effect to represent the property in the goods therein described or to convey title to the goods," and it is therefore not such a receipt as is covered by the statute.

Section 124, *supra,* contemplates the delivery or deposit of certain commodities "upon any wharf or place of storage, or in any warehouse, mill, store or other building." Plaintiff in error contends that the rule *ejusdem generis* applies, and that the words last quoted in fact mean "upon any wharf or other place of storage of the *same kind,* or in any warehouse or other building of the *same kind."* It is then asserted that the word "wharf" and the word "warehouse" have definite meanings in the law, and indicate places where goods are received and stored for profit; that the statute only applies to places of that character and to persons who receive and store the goods of others for gain.

In 1851 a law was enacted in this State entitled "An act relating to warehousemen, wharfingers and other persons, and to prevent fraud." (Laws of 1851, p. 9.) The first four sections of that law denounce certain acts which by that statute were made criminal. Each of those sections begins, "that no warehouseman, wharfinger or other person," and the rule for which plaintiff in error here contends no doubt there applied, the "other person" intended by that statute being a person engaged in a business of the same kind as that of a warehouseman or wharfinger. The statute

of 1851 continued to be the law of this State until July 1, 1874. It was repealed by an act approved March 5, 1874. (Rev. Stat. 1874, p. 1011.) Sections 124 and 125, *supra,* were part of an act approved March 27, 1874, which went into effect on July 1, 1874, at the same time that the act of 1851 ceased to be the law.

While the statute of 1851 was in force the constitution of 1870 was adopted, section 1 of article 13 of which reads: "All elevators or storehouses where grain or other property is stored for a compensation, whether the property stored be kept separate or not, are declared to be public warehouses." Thereafter the legislature of 1871 passed an act which was approved April 25, 1871, (Laws of 1871-72, p. 762,) and which divided public warehouses, as defined in article 13 of the constitution, into three classes, and section 25 of that act provides:

"Sec. 25. Any warehouseman of any public warehouse who shall be guilty of issuing any warehouse receipt for any property not actually in store at the time of issuing such receipt, or who shall be guilty of issuing any warehouse receipt in any respect fraudulent in its character, either as to its date or the quantity, quality, or inspected grade of such property, or who shall remove any property from store (except to preserve it from fire or other sudden danger,) without the return and cancellation of any and all outstanding receipts that may have been issued to represent such property, shall, when convicted thereof, be deemed guilty of a crime, and shall suffer, in addition to any other penalties prescribed by this act, imprisonment in the penitentiary for not less than one, and not more than ten years."

It is at once apparent, upon a comparison of section 25, *supra,* with section 125, *supra,* as plaintiff in error states, that the latter includes persons and covers acts not included in or covered by the former. The question is, does the latter act include one who does not receive the goods of another for the purpose of storing them for profit? We think

a comparison of the enactment of 1851 with sections 124 and 125, *supra,* aids in determining the meaning of the present statute.

It is to be observed that the act of 1851 is limited in its operation by the words descriptive of the persons to whom it shall apply, those words being, as hereinabove pointed out, "warehouseman, wharfinger or other person." Sections 124 and 125, *supra,* do not contain these words, but instead, for the apparent purpose of indicating the persons at whom the statute is aimed, each section begins with the word "whoever," which would seem to make the statute of more general application than that of 1851. If the later statute is limited, as contended by the plaintiff in error, the limitation must be gathered from the words "in any warehouse, mill, store or other building." Do the words "mill, store or other building" mean only buildings in which goods are received in store for hire? If so, it is manifest that the words "mill" and "store," as used in the statute, are superfluous, because both would be included in the term "or other building," and it is certain that the word "mill," at least, does not ordinarily indicate a place or building in which goods are stored for hire. It is a cardinal rule of construction that every clause, sentence and word in a statute should, if possible, be given effect. The rule *ejusdem generis,* moreover, does not apply "where the specific words signify subjects greatly different from one another, for here the general expression might very consistently add one more variety; in such case, the general term must receive its natural and wide meaning." (26 Am. & Eng. Ency. of Law,—2d ed.—p. 610.) If plaintiff in error's contention that the word "warehouse," as used in this statute, means only a warehouse in which goods are stored for hire, then the word "mill" is of such greatly different significance that the rule under discussion cannot be held to so limit the words "or other building" as that they will include only buildings in which goods are so stored. It seems extremely improbable that the legislature,

by the use of the words "wharf or place of storage, or in any warehouse, mill," etc., intended to place upon the operation of the statute on this subject, so far as persons brought within its purview are concerned, precisely the same limitation that is removed by using in the statute of 1874 the word "whoever" in lieu of the words "warehouseman, wharfinger or other person," as found in the statute of 1851, and yet this would be the precise result if the construction of counsel for plaintiff in error be the correct one. In our opinion the legislature intended sections 124 and 125, *supra*, to include all buildings, of every kind and character, in which goods, wares and merchandise are or may be stored, whether for hire or otherwise.

It is then urged that words of section 124, *supra*, especially those which forbid the utterance of "any receipt or other written evidence of the delivery or deposit of any grain," etc., and those which forbid the utterance of the writing unless the goods are "still in store and the property of the person to whom or to whose agent the receipt is issued," etc., show conclusively that the statute does not cover a writing evidencing the deposit in a building of goods belonging to the owner of that building. It may be conceded that the ordinary meaning of the word "receipt" would not indicate a writing evidencing a transaction of the kind mentioned, but there might well be written evidence that the owner of certain grain had deposited that grain in a building owned by him. If the owner made a written statement that grain owned by him had been so deposited, and signed the same, and thereafter transferred the writing to another for the purpose of conveying the grain, that writing, as against him, would be written evidence of the deposit of the grain in the building in question, and would, we think, satisfy the requirements of the statute in that regard. Such a writing would only be regarded as "issued" when assigned, transferred or delivered by the owner of the building to some other person. If the owner of the building made such

a writing and rightfully kept it in his own possession, it would, of course, be entirely ineffective for all purposes. It is when he has assigned, transferred or delivered such writing to another that it is "issued," within the meaning of the statute.

Counsel for plaintiff in error have cited a number of cases arising in other States which they deem important in the consideration of the questions which we have just been discussing. We have examined those cases and the statutes in the various States under which they arose, and are of the opinion that those statutes are so materially different from our own that the cases should not be given controlling effect, especially in view of the history of legislation on this subject in this State.

The receipt in the case at bar reserved to McReynolds the right to "store" or intermingle the grain with other grain of the same grade, and it was, in fact, so intermingled. It is urged that this receipt had no legal effect "to represent the property in the goods therein described or to convey title to the goods," and that the statute does not apply for the reason that the legislature could not have intended to protect a document which was without legal effect, so far as transferring the goods or any property interest therein was concerned. Plaintiff in error, for the purpose of showing that his view of the effect of this receipt is the correct one, relies principally upon the cases of *Union Trust Co.* v. *Trumbull,* 137 Ill. 146, and *Snydacker* v. *Blatchley,* 177 id. 506. In the *Trumbull case* there was a contest between the creditors of Hall & Co., an insolvent firm. One Vehmeyer held a receipt, the legal effect of which, so far as the question now under consideration is concerned, was the same as that of the receipt in the case at bar. The firm made a voluntary assignment under the law of the State. Vehmeyer claimed a specific lien upon certain property of the character indicated by his receipt. The court held that certain other persons were entitled to liens upon that property and that

Vehmeyer was not entitled to a specific lien, as claimed. The assets were not sufficient to satisfy the liens of such other persons. There is nothing in the opinion that indicates the view of the court in reference to the rights of Vehmeyer as against Hall & Co. under the receipt, had the claims of such other persons not intervened or had the assets been sufficient to satisfy the claims of all. Vehmeyer was merely denied all rights as a secured creditor. In the *Snydacker case* the instrument executed, while denominated a grain receipt, was, in effect, a chattel mortgage, and the court merely held that as there was no acknowledgment and recording and no change of possession the instrument was not valid as against third parties. It is manifest that neither of these cases warrants the conclusion that a receipt, such as that before us, does not affect the title to or the ownership of the property as between the person signing it and the holder thereof. So far as the title to the grain itself, or so far as the creation of any lien thereon, is concerned, as to third parties the receipt was, of course, absolutely without effect.

The vendor may sell a quantity of grain, part of a mass, the quantity so sold not being identified or separated from the mass and not being delivered, and the title thereto will pass as between the vendor and the vendee. (*Cushing* v. *Breed*, 14 Allen, 376; *Kimberly* v. *Patchin*, 19 N. Y. 330; *Yenni* v. *McNamee*, 45 id. 614; *Young* v. *Niles*, 20 Wis. 646; *O'Dell* v. *Lyda*, 40 Ohio St. 245; *Merchants' Bank* v. *Hibbard*, 48 Mich. 118; *National Exchange Bank* v. *Wilder*, 34 Minn. 149; see, also, reasoning of opinion in *Cloke* v. *Shafroth*, 137 Ill. 393.) It is, of course, true, that where the property sold has not been identified or separated from the common mass replevin could not be maintained, but it is also true that if the whole was destroyed by fire without the fault of the owner of the building in which the grain was stored and while that sold was still unidentified and undelivered, the loss would fall upon the vendee to the extent of the grain sold to him. (*Hoyt* v. *Fire Ins. Co.* 26 Hun,

416.) It seems equally clear that if the owner of a building had therein 10,000 bushels of corn in a common mass and should sell 1000 bushels to each of ten different persons without identifying or separating any of that sold, and make and assign to each vendee a receipt like unto that assigned by McReynolds to the bank, and that by proper endorsement and transfer all the receipts should come to the hands of the same party, this party could then maintain replevin for the corn if it still remained undisturbed in vendor's building.

Had the transaction between McReynolds and the bank been intended as a sale, we think the title to the corn would have passed as between the vendor and the vendee, and that the receipt having been endorsed and delivered as collateral security, it was, in legal effect, an unrecorded and unacknowledged chattel mortgage, possession of the property remaining with the mortgagor, and that it was such an instrument as comes within sections 124 and 125, *supra.*

It is urged that there is a fatal variance between the allegations and proof, because, it is said, there were 3000 bushels of corn in the elevator which was of the description specified by the receipt, while the indictment charged that a large amount of the corn, "to-wit, all of the said 4670 bushels and forty pounds," had been removed. The point is, that the proof would not support a conviction, in view of the phraseology of the indictment, unless it showed the removal of all the corn. By a fundamental rule of evidence the averment of the indictment made proof of the removal of all or any portion of the corn admissible. There was no variance.

Evidence was introduced which showed that on the 19th of January, 1906, there were 6000 bushels of corn in cars standing on railroad tracks in a yard which was a part of the elevator property and which was operated in conjunction with the elevator. It is insisted that the first instruction given at the request of the prosecution was erroneous, because it advised the jury, in substance, that the fact that McReynolds owned this corn in the yard was without sig-

nificance. We think the instruction was correct. McReynolds was required by the law to keep the corn in the "place of storage," which was the building, and not the yard.

We have carefully considered other assignments urged by counsel which question the action of the court in passing on instructions to which the foregoing portion of this opinion does not apply and in permitting evidence to go to the jury over the objection of McReynolds. The indictment, by proper averment, charges a violation of section 125, *supra*. Evidence was admitted to which no objection of any character was interposed and which was in nowise questioned or disputed, which, as we have above construed the statute, conclusively establishes the fact that McReynolds is guilty of the crime for which he was tried. The alleged errors pointed out by such other assignments, even if well assigned, would not, under these circumstances, warrant reversal. Under our construction of the statute they are harmless in any event, and for this reason it is unnecessary to lengthen this opinion by discussing them.

The judgment of the criminal court will be affirmed.

*Judgment affirmed.*

CARTWRIGHT and VICKERS, JJ., dissenting:

It is the rule in the construction of statutes that the legislature are presumed to have used words in their ordinary and popular meaning, and applying that rule to sections 124 and 125 of the Criminal Code, it, in our opinion, forbids the interpretation given to them in the foregoing opinion. The words "any receipt or other written evidence of the delivery or deposit of any grain, flour, pork, wool, salt, or other goods, wares or merchandise, upon any wharf or place of storage, or in any warehouse, mill, store or other building," contained in section 124, when given their ordinary meaning, can only be applied to an acknowledgment by one person to another of the delivery or deposit of such property with the person giving the instrument, by the per-

son to whom it is given: We do not see how the words can be applied to an instrument by which a person acknowledges that he has his own goods or property in his own warehouse, mill, store or other building. It is only one who has "given any such receipt or written evidence of deposit or storage" who can be guilty of the offense specified in section 125.

Another rule is that criminal statutes shall be strictly construed, and in this case we think that rule is violated by giving the most liberal construction possible to the words of the statute, so as to bring the instrument executed by the plaintiff in error within the terms of the statute. Under the rule of strict construction, always adopted in construing statutes creating crimes, we do not see how the instrument in question can be held to be a receipt or written evidence of deposit or storage of grain with the plaintiff in error.

Upon consideration by the court of the petition for a rehearing in this cause, Mr. Justice SCOTT delivered the following additional opinion of the court:

Plaintiff in error, by his petition for rehearing, contends, among other things, that the cases of *Sykes* v. *People,* 127 Ill. 117, *Mayer* v. *Springer,* 192 id. 270, and *State* v. *Stockman,* 30 Ore. 36, are of controlling importance in this case, and erroneously assumes that as those cases were not discussed in the opinion herein they did not receive the consideration of the court.

In the *Sykes case* the court considered whether section 25 of the Warehouse act was repealed by sections 124 and 125 of the Criminal Code, and determined there was no such repeal. It was there decided that the sections of the Criminal Code referred to include "places of deposit or of storage not public warehouses as designated in the Warehouse act," and make unlawful certain things not made unlawful by the Warehouse act. There is nothing in that opinion which even remotely indicates the view of the court as to whether

those sections extend to and include a building where the business of "storing the goods of others for hire" is not conducted, which is the question in reference to which plaintiff in error deems the case important. The opinion heretofore filed in this case recognizes the law to be as it is stated in the case last referred to, and, indeed, the law so stated was not in anywise questioned by defendant in error.

In *Mayer* v. *Springer, supra,* the court determined that a mill in which the business of a public warehouseman was not ordinarily conducted did not become a public warehouse where the owner occasionally received and stored therein grain upon which he held an option of purchase, and it was said that isolated instances of so receiving grain would not convert "a mill, store, barn or granary" into a public warehouse. It is urged that this case shows that the word "mill," as used in the statute, comes within the same class of buildings or places of deposit as a warehouse or a wharf, and that for this reason it is apparent that the rule *ejusdem generis* must be held to apply to the words "warehouse, mill, store or other building," as used in section 124, *supra.* We think no such conclusion can fairly be drawn. In fact, "mill" is by that opinion classed with "store," "barn" and "granary." Certainly a barn signifies a place greatly different from a wharf or warehouse, and does not, within any ordinarily accepted meaning of the word, indicate a place where the business of "storing the goods of others for hire" is conducted. The two Illinois cases above mentioned have no application whatever to the controverted legal questions arising upon this record.

We stated in the original opinion herein our reason for declining to give weight to cases relied upon by plaintiff in error (including *State* v. *Stockman, supra,*) which had been determined in other jurisdictions, and nothing is to be added to what was there said in reference to such adjudications.

The petition for rehearing will be denied.

*Rehearing denied.*