WILLITS & PATTERSON, Appellant, v. ABEKOBEI & CO., LIMITED, Respondent.

First Department, July 1, 1921.

Sales — c. i. f. contract modified by expression " net landed weight " — action by buyer to recover portion of purchase price paid because of shortage at time of delivery — motion to vacate warrant of attachment denied.

The expression " net landed weight " in a c. i. f. contract for the sale of goods to be shipped from Japan to San Francisco modifies said contract so as to make it one for delivery by the seller at San Francisco of the full weight stipulated.

In an action by the buyer to recover the proportionate amount of the purchase price paid because of a shortage existing at the time of delivery, *held*, that the plaintiff has shown by his complaint and affidavit the existence of a cause of action and that, therefore, a motion to vacate a warrant of attachment obtained by the plaintiff should be denied.

APPEAL by the plaintiff, Willits & Patterson, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 29th day of November, 1920, resettling an order entered in said clerk's office on the 11th day of November, 1920, granting defendant's motion to vacate a warrant of attachment obtained by plaintiff.

*Kenneth M. Spence* of counsel [*Morton Abrahams* with him on the brief; *Travis, Spence & Hopkins,* attorneys], for the appellant.

*Clifton P. Williamson* of counsel [*Alexander & Green,* attorneys], for the respondent.

SMITH, J.:

The plaintiff is a California corporation. The defendant is a Japanese corporation. Upon the 22d of December, 1919, they entered into a contract on the part of the defendant to sell and on the part of the plaintiff to purchase some soya bean oil. This contract was in the following form:

" Kobe Sale No. 84.            KOBE, *22nd December,* 1919.
" Messrs. WILLITS & PATTERSON,
            " San Francisco.
" Bought of ABE KOBEI KOBE BRANCH,
                  " Kobe, Japan.

| Date | Quantity | Description | Packing | Shipment | Price |
|------|----------|-------------|---------|----------|-------|
|  | 10,000 cases | Bean Oil not exceed 3% of fatty acid Net landed weight | 75 lbs. tin in cases | Jan /Feb / March 1920 | $15.00 per 100 lbs. cif San Francisco. |

                1% of Commission
                to Mr. Donkin
          Comm. Paid Mar. 27

" Confirmed by your Mr. H. Donkin
            " on the 22nd December 1919
" Terms:— as usual
                  " ABE KOBEI KOBE BRANCH
                              " P. P. M. Mori."

It will be noticed that the contract called for 10,000 cases, 75 pounds in each case, which would make 750,000 pounds of this oil. The plaintiff paid the full price for the oil. When the oil arrived in San Francisco, however, there was a shortage of 79,555 pounds. This action is brought by the plaintiff, the buyer, to recover back the proportionate amount of the purchase price paid, which amounts to $11,483. The complaint

contained two causes of action. The first cause of action was to recover back the amount paid upon a contract for the delivery of peanut oil, upon which there was a shortage at the time of delivery of the value of $12,864, so that the amount demanded in the complaint was the sum of $24,167, with interest from the 17th day of August, 1920. This included the damages upon both causes of action. An attachment was granted and levied upon property of the defendant in the State of New York. Upon defendant's motion to vacate that attachment, the plaintiff made no claim that the first cause of action was proven, but sought to uphold the attachment as to the second cause of action. The Special Term held, however, that there was no cause of action shown by the papers and granted the order wholly vacating the attachment. The sole question presented for determination here is as to whether the plaintiff has shown by his complaint and affidavit the existence of the cause of action set forth in the complaint as the second cause of action which is upon the contract hereinbefore set forth. The Special Term has held that this contract was simply a c. i. f. contract and that the perils of the voyage from Japan to San Francisco were at the buyer's risk, and for failure to show that this shortage existed at the time of the delivery to the carrier, the plaintiff has failed to show any right of action.

The law is well settled that a simple c. i. f. contract requires the seller to deliver to the carrier and upon such delivery the obligation of the seller is at an end and the risk of the voyage is thereafter with the buyer. These contracts of sale, however, are to be construed according to the intention of the parties. A straight f. o. b. contract is satisfied by the seller's delivery to the carrier for the purpose of shipment, the risk of transportation resting upon the buyer. If, however, there be anything in the contract which shows that such was not the intention of the parties, the contract will be construed according to their intention. This court has lately held in the case of *Standard Casing Co., Inc.,* v. *California Casing Co., Inc.* (197 App. Div. 187) that in a contract to ship from California to New York, reserving the right of inspection to the buyer at New York, the liability of the seller was shown by this provision to extend to a delivery in New York city, notwith-

standing the contract provided for a price f. o. b. San Francisco. This case followed a decision of this court in the case of *Boss* v. *Hutchinson* (182 App. Div. 88) wherein it was held, notwithstanding a named price f. o. b. at point of shipment that the right of inspection at the destination of the transportation indicated an intention that the delivery was not to be deemed complete until such destination was reached. In the case at bar we find the expression "Net landed weight." This expression can only have one significance and that significance is that the weight at the point of landing, to wit, at San Francisco, must accord with the requirements of the contract. It is true that this expression is put in a column under the word "description," and preceding in that column are the words "Bean Oil not exceed 3% of fatty acid." But the provision "Net landed weight," although appearing in that column, is a distinct expression, not connected with the description in any way. The clause begins with a capital " N," and although it is in the column marked " description," it is between the first column which provides for 10,000 cases and the third column which provides for seventy-five pounds in a case, under which circumstances it may well be held that it was not intended in any way to be a part of the description of the property sold, but was rather intended to be a part of the weight as specified in the first and third columns, although placed in the second column under the word " description " between the first and third columns. Wherever these words might be placed, however, no significance can be given to these words as a part of the description of the article sold. The description in reference to the extent of fatty acid can in no way be determined by weight. It is shown that the amount of fatty acids is determined by chemical analysis and it is not apparent how the net landed weight can in any way qualify the description.

The first cause of action, which has been abandoned, is upon a contract specifying peanut oil " delivered weight," and the contract is defined to be a c. i. f. contract. It might well be held in such a case that " delivered weight " means the weight upon delivery to the carrier. This contract sued upon contains the words " terms as usual." There had been prior contracts between these parties, and one of these contracts

not sued upon in this case was for peanut oil not to exceed two per cent fatty acid at arrival. The terms of the contract " net landed weight," can under no conceivable reasoning be held as qualifying the terms of the contract not to exceed three per cent fatty acid, as though they read " on arrival." In no other contract referred to is this expression used and the significance of the expression to my mind is so plain that the only interpretation that can be given to it is that the weight upon arrival at San Francisco should conform to the weight required in the contract. Within the authorities cited construing f. o. b. contracts, I am of opinion that in this contract the expression c. i. f. is deemed modified so as to make the contract one for delivery at San Francisco, and such seems to me to be the plain intention expressed by the contract itself. It is further urged that the letter of credit procured by the plaintiff referred to the contract as a c. i. f. contract, which is deemed to be significant as indicating a practical interpretation by the plaintiff of the meaning of the contract. To my mind that has little significance, however, as the contract was clearly a modified c. i. f. contract, to an extent to fix the liability of the seller to pay the freight and insurance, and to provide for a delivery at San Francisco. If the procurement of the letter of credit be deemed a practical interpretation by the plaintiff of the terms of the contract, the fact that the insurance policy was not attached to the bill of lading, nor sent to the plaintiff, might, on the other hand, be deemed an interpretation by the defendant of its liability for the risk of the voyage, in the retention of this policy of insurance to indemnify the defendant for the risk of transportation. The cases have held that under an ordinary c. i. f. contract, the policy of insurance should accompany the bill of lading, which was not done. In *Ireland* v. *Livingston* (L. R. 5 H. L. 395, 406) Justice BLACKBURN says: " The invoice is made out debiting the consignee with the agreed price (or the actual cost and commission, with the premiums of insurance and the freight, as the case may be) and giving him credit for the amount of the freight which he will have to pay to the shipowner on actual delivery, and for the balance a draft is drawn on the consignee, which he is bound to accept (if the shipment be in conformity with his contract) on having

handed to him the charter party, bill of lading *and policy of insurance.*" Little light, therefore, is thrown upon the interpretation of the contract by any practical interpretation given by the parties, and in view of what I deem to be the plain intendment of the contract as expressed in the words " net landed weight," I deem the right of the buyer established to receive at San Francisco the full weight stipulated for in the contract.

It is not necessary to discuss the question as to the rights of the plaintiff to establish his cause of action by supplementary affidavits, as that right does not seem to be challenged in the respondent's brief, and is clearly given by section 768 of the Code for the purpose of showing the existence of a cause of action, although the right may be denied under this Code provision for the purpose of showing the jurisdiction of the court.

The order should, therefore, be reversed, with ten dollars costs and disbursements, and the motion to vacate the attachment denied, with ten dollars costs.

CLARKE, P. J., DOWLING, PAGE and GREENBAUM, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.