**OLD COLONY TRUST CO. v. LAWYERS' TITLE & TRUST CO.** *

(Circuit Court of Appeals, Second Circuit. February 4, 1924.)

No. 162.

1. **Banks and banking ⬡191—Conditions of letter of credit must be strictly complied with.**

   The contract embodied in a letter of credit is for the purchase of documents and not of goods, and such documents must conform strictly to the requirements of the letter for the protection of the issuing bank in honoring it.

2. **Banks and banking ⬡191—Conditions precedent to payment under letter of credit.**

   Where a letter of credit covered drafts drawn against shipments of sugar "net landed weights, duty paid," which weights could only be ascertained after the sugar had been landed and weighed by the customs officials, drafts were not payable until the sugar had passed through the custom house and was free of government control.

3. **Banks and banking ⬡191—Refusal to pay draft on particular ground held not to estop bank to set up other grounds.**

   That refusal of a bank to honor a draft drawn against a letter of credit was placed on a particular ground *held* not to estop it from setting up other valid grounds of which it did not then know or have reasonable means of knowing, particularly where the defects set up could not have been cured.

4. **Banks and banking ⬡191—Letter of credit not affected by trade custom.**

   A trade custom which may affect contracts between seller and buyer cannot affect obligations under a letter of credit, which are governed by its express terms.

5. **Banks and banking ⬡191—Illegal warehouse receipt held not to comply with requirement of letter of credit; "warehouse receipt."**

   A bank issuing a letter of credit covering drafts drawn against sales and accompanied by negotiable warehouse receipts cannot be required to accept a "warehouse receipt" for the merchandise when it is not in fact

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 44 Sup. Ct. 459, 68 L. Ed. ——.

in the warehouse, but the receipt is illegal and its issuance constitutes a crime under the state statutes.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Warehouse Receipt.]

6. Banks and banking ⊂⊃191—Bank issuing letter of credit not required to accept documents known to be false or illegal.

When the issuer of a letter of credit knows that a document, though correct in form, is in point of fact false or illegal, it cannot be called upon to recognize such document as complying with the terms of the letter of credit.

7. Banks and banking ⊂⊃191—Order for delivery held not sufficient under letter of credit.

Where a letter of credit for payment of drafts drawn against shipments of sugar, which were to be accompanied by orders for delivery, "landed weights," an order for delivery of sugar still on board ship was insufficient.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by the Old Colony Trust Company against the Lawyers' Title & Trust Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Writ of error to a judgment of the District Court for the Southern District of New York entered upon the dismissal by the court of the complaint on the merits at the close of plaintiff's case.

The action was brought to recover damages for defendant's alleged breach of its contract contained in the following irrevocable letter of credit issued and delivered on or about June 8, 1920, by defendant for value received to E. R. Sherburne Company, a Massachusetts corporation having a place of business in the city of New York:

"June 8, 1920.

"Irrevocable Letter of Credit No. 104.

"E. R. Sherburne & Co., 106 Wall Street, New York, N. Y.—Gentlemen: We hereby authorize you to value on the Lawyers' Title & Trust Co. of Brooklyn, New York, for account of Josef Reiter, 157 Atlantic avenue, Brooklyn, up to an aggregate amount of four hundred and fifty-three thousand six hundred ($453.600) dollars, United States currency, available by your sight drafts against shipment of 1,000 tons of 2,240 lbs. each white Java sugars packed in bags of about two (2) cwt. each at twenty and one quarter cents (20¼c.) net landed weights, duty paid, per pound.

"The following documents acceptable to us must accompany draft: Negotiable delivery order or negotiable warehouse receipt, invoice in triplicate and, should we so decide, documentary evidence that sugars were shipped from the Island of Java on or before Sept. 30th, 1920.

"Drafts drawn under this credit must be drawn and negotiated prior to November 30th, 1920, and must state that they are drawn under the Lawyers' Title & Trust Company's letter of credit No. 104, dated New York, June 7, 1920. This letter of credit must accompany the final drafts.

"We hereby agree with the drawers and bona fide holders of drafts, drawn, presented under and in compliance with the terms of this commercial letter of credit that the same shall be duly honored upon presentation at the office of Lawyers' Title & Trust Company, 44 Court St., Brooklyn, N. Y.

"Lawyers' Title & Trust Company,
"By Frederick E. Gunnison,
"Vice President."

The complaint sets forth two causes of action, the first in respect of a draft of $449,550 accompanied by a warehouse receipt, payment of which was refused by defendant, and the second in respect of a draft of $4,045.95 accompanied by a delivery order, payment of which was also refused.

Plaintiff had advanced large sums to E. R. Sherburne Company and had received the letter of credit, supra, as collateral security. During the week ending November 27, 1920, plaintiff had received from E. R. Sherburne Company two sight drafts dated November 23, 1920, stated to be drawn under the letter of credit. The larger of these drafts was for $449,550. The smaller was received blank as to the amount, which, however, was filled in by plaintiff in the sum of $4,045.95. On November 29th, Mr. Sweeney, foreign exchange clerk of plaintiff and Mr. Thomas, an attorney associated with plaintiff's counsel, went to the office of defendant at 44 Court street, Brooklyn, New York City, and presented the two drafts accompanied by defendant's letter of credit and certain other documents. With the larger draft the following documents were tendered:

1. Negotiable warehouse receipt, as follows:

"Bowne Stores, 611 Smith Street,          -

"No. 326.                              Brooklyn, N. Y., Nov. 29, 1920.

"Received in store Nov. 29, 1920, at Brooklyn, N. Y., from Minford Lueder Co.,          thousand (10,000) bags Java white sugar, 222 pounds each, mkd. Superior LRT made in Java on storage subject to the order of Minford Lueder Co. on payment of the charges accrued thereon and in accordance with the marginal note hereto annexed. Condition quality and quantity of contents unknown. In store 'A'.                              Bowne Stores,

"By Lance J. Morton.

"Storage 4 c. per 100 lbs. per month.
"Labor 5c. per 100 lbs.
"Other charges:          .

"General office, 611 Smith Street,
"Brooklyn, N. Y.

"This receipt must be surrendered for delivery of goods covered herein."

2. Invoice in triplicate of E. R. Sherburne Company for "10,000 bags (each 222 lbs.) White Java sugar" marked "Superior made in Java LRT New York."

3. Negotiable ocean bill of lading showing shipment on the Ayaha Maru from Java on August 28, 1920, of 12,050 bags of Superior Head sugar marked "Superior made in Java LRT New York."

4. Consular certificate of origin.

5. Declaration of shipper.

At the time when the larger draft and accompanying documents were presented, there were present in addition to Mr. Sweeney and Mr. Thomas, Mr. Gunnison, defendant's vice president, Mr. King, defendant's counsel, Mr. Josef Reiter, at whose instance the letter of credit was issued, his counsel Mr. Johnston, and a Mr. Kennedy of the Sugar Planters' Corporation. The smaller draft was presented later on the same day and was accompanied by the following documents:

1. Delivery order, as follows:

"Old Colony Trust Company, Foreign Department.
"Boston, Mass., Nov. 29, 1920.

Delivery Clerk, S. S. West Armagosa:

"Please deliver to Lawyers' Title. & Trust Company, or order, White Java sugar as follows:

| Quantity | Make and Number | Ex your W/R number |
|---|---|---|
| 90 bags | G H F | |
| | Superior | |
| | New York | |
| | Made in Java | |

"Yours very truly,                              J. J. Sweeney,
"For Manager Foreign Department."

2. Invoice in triplicate of E. R. Sherburne Company for 90 bags of white Java sugar ex steamship West Armagosa.

3. Negotiable ocean bill of lading showing shipment on the West Armagosa from Java on September 2, 1920, of 1,002 bags of white Java sugar marked "G H F."

Mr. Thomas testified that the objections made on behalf of defendant to the larger draft were "that the goods were not in the warehouse and were not unloaded from the lighters"; and to the smaller draft that "the delivery order was not such a delivery order as was contemplated by the letter of credit, because the goods were on a ship and there was not sufficient documentary evidence that the goods had been shipped from Java."

The testimony shows beyond dispute that the merchandise was not in storage in "Store A of the Bowne Stores." On the contrary, the bags on two out of the three lighters of the Lees Lighterage Company were at that time unloaded. At the end of November 29, 1920, only 4,410 bags were in the warehouse and not 10,000 bags, and the proprietor of the warehouse testified that at the time the receipts were issued there were not 4,410 bags there.

The facts, in effect, as to the falsity of these warehouse receipts, were made known to defendant prior to its refusal to honor the larger draft.

Such other facts as need be stated will be referred to infra.

Breed, Abbott & Morgan, of New York City (Eugene W. Leake, of New York City, Samuel H. Pillsbury, of Boston, Mass., and Henry H. Abbott and Edward A. Craighill, Jr., both of New York City, of counsel), for plaintiff in error.

Dean, King & Smith, of New York City (Nathan L. Miller and Frederick P. King, both of New York City, of counsel), for defendant in error.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

MAYER, Circuit Judge (after stating the facts as above). We have omitted many details which appear in this record because, in our view, the case narrows down to a few points. The transactions between the Sherburne Company and Old Colony Trust Company prior to the issuance by defendant of the letter of credit are immaterial, except, perhaps, in so far as they explain the personnel.

We start with the letter of credit to ascertain the rights and obligations of the parties, and we shall assume for the purposes of this opinion that plaintiff was the holder in good faith of this letter of credit.

We regard the law as settled for this circuit by our decisions in American Steel Co. v. Irving Nat. Bank, 266 Fed. 41, Harper et al. v. Hochstim et al., 278 Fed. 102, 20 A. L. R. 1232, and International Banking Corporation v. Irving Nat. Bank, 283 Fed. 103, affirming (D. C.) 274 Fed. 122.

[1] In these cases, this court pointed out that the transaction is one to purchase documents and not goods and that, in our view, the documents referred to in a letter of credit must conform in every respect with the requirements of that letter of credit.

The litigations, in this and other courts, which have arisen in the past few years, were the obvious outgrowth of radical changes in prices. It would be dangerous if bankers or banking institutions who issue letters of credit were confronted with the problem of deciding anything more than whether or not the documents presented were the documents required under the letter of credit and whether the conditions in the letter of credit set forth were complied with. Behind a letter of credit of the kind here concerned are, of course, always the buyer and seller of the merchandise, and usually the buyer, as here, indemnifies the issuer of the letter. The banker is always in a posi-

tion of sharp responsibility, and, if he honors a letter of credit contrary to its terms, he may invite troublesome litigation. Thus, it is to the interest of the merchant as well as the bank that it should not be made difficult to obtain letters of credit because of technical reasons, and hence that the issuance of such letters shall not be embarrassed by placing upon the issuing bank any responsibility to look beyond the documents required under the letter and the conditions, if any, with which under the letter there must be compliance.

[2] 1. In the case at bar, there were several requirements beside the presentation of the documents. The letter of credit, for instance, required that the sugar should be "white Java" and that drafts were to be drawn only against "net landed weights."

The testimony shows that net landed weights are only ascertained after the merchandise has been landed and weighed and, after the United States customs officials have finished weighing to determine the duty payable on the importation. Willits & Patterson v. Abekobei & Co., Ltd., 197 App. Div. 528, 531, 189 N. Y. Supp. 525.

In the case at bar, in respect of the larger draft, the sugar was not officially weighed by the government until December 3d, four days after the drafts were tendered and three days after the letter of credit expired. In respect of the smaller draft, the sugar was not weighed until December 20th. The language of the letter of credit clearly stated "by your sight drafts against shipment of 1,000 tons of 2,240 lbs. each White Java sugars packed in bags of about two (2) cwt. each at twenty and one quarter (20¼c.) net landed weights, duty paid, per pound"; and this plainly meant that the sugar must have been delivered free from any control of the government and that the necessary United States customs procedure in this regard should be completed.

The invoices in triplicate presented with the drafts each stated so many lbs. "net at 20¼c. net landed weights duty paid New York."

As this statement was false, there was failure of compliance with the letter of credit, and we might stop here.

But this contention of defendant is attacked on several grounds, two of which we notice.

[3] First. It is said that the refusal to honor the drafts was not placed by defendant on the net landed weights ground and many cases, of which, perhaps, Railway Co. v. McCarthy, 96 U. S. 258, 267, 268, 24 L. Ed. 693, is the leader, are cited. As pointed out in that case, this doctrine is really founded on the principle of estoppel and estoppel presupposes either knowledge or information of a sufficient character or the means of obtaining such knowledge or information by reasonable inquiry in the circumstances. In the absence of such knowledge or information, there can be neither waiver nor estoppel, particularly in regard to a defect which cannot be cured.

[4] Secondly. Three witnesses testified that by an established custom in the sugar importing trade the phrase "net landed weights" has a definite and well-understood meaning, namely, that upon presentation of the documents payment is to be made on the basis of the invoice weights (either the full amount or a specified percentage thereof according to the terms of the contract), and, upon the subsequent

ascertainment of the net landed weights, there is to be an adjustment on that basis. In other words, if the net landed weights exceed the invoice weights, an additional payment would be required, and, per contra, if the net landed weights are less than the invoice weights, then a refund would be necessary.

Assuming the existence of this custom, it will be noted that it relates to a custom between buyer and seller and, in any event, is somewhat dependent upon the contract between them. It is not a custom in respect of letters of credit where, to repeat, we must always return to the language.

[5] 2. But the case does not depend upon the question of net landed weights.

Under section 91 of the New York General Business Law (Consol. Laws, c. 20), relating to warehousing, a warehouse receipt need not be in any particular form, "but every such receipt must embody within its written or printed terms: (a) the location of the warehouse where the goods are stored." The issue by a warehouseman of a receipt for goods not received is denounced as a crime under sections 134 and 135 of the same statute.[1]

We think this branch of the case very simple. When the letter of credit required a negotiable "warehouse receipt," it, of course, meant a genuine warehouse receipt in the sense of a legally proper warehouse receipt in accordance with the law of New York where the letter of credit was issued and where its obligations were to be performed. Before the goods are stored in a warehouse so as to enable the warehouseman to give an appropriate receipt, many contingencies may occur, and, in view of such contingencies, it is plain to any one familiar with the nature of dealings of this character that it is vital that the goods shall physically be in the warehouse and that fact evidenced by legitimate warehouse receipt. Defendant cannot be called upon to determine questions of constructive possession and any similarly controverted points of law or fact. The matter is very simple when colloquially stated. It was as if defendant trust company said, "With your draft, deliver to us a truthful warehouse receipt which will inform us that the goods are in the warehouse."

We think the effect of the failure of plaintiff to conform with this requirement of the letter of credit is too plain to call for anything further than the mere citation of a few cases. McReynolds v. People, 230 Ill. 623, 82 N. E. 945; United States v. Ehrgott (C. C.) 182

[1] General Business Law—New York.
"Section 134. *Issue of Receipt for Goods Not Received.*—A warehouseman, or any officer, agent or servant of a warehouseman, who issues or aids in issuing a receipt knowing that the goods for which such receipt is issued have not been actually received by such warehouseman, or are not under his actual control at the time of issuing such receipt, shall be guilty of a crime, and upon conviction shall be punished for each offense by imprisonment not exceeding one year, or by a fine not exceeding one thousand dollars, or by both.
"Section 135. *Issue of Receipt Containing False Statement.*—A warehouseman, or any officer, agent or servant of a warehouseman, who fraudulently issues or aids in fraudulently issuing a receipt for goods knowing that it contains any false statement, shall be guilty of a crime, and upon conviction shall be punished for each offense by imprisonment not exceeding one year, or by a fine not exceeding one thousand dollars, or by both."

Fed. 271; Starr v. Beerman (Sup.) 189 N. Y. Supp. 174; Fisher Reeves & Co., Ltd., v. Armour & Co., Ltd., 90 L. J. K. B. 172 (1921).

[6] Obviously, when the issuer of a letter of credit knows that a document, although correct in form, is, in point of fact, false or illegal, he cannot be called upon to recognize such a document as complying with the terms of a letter of credit.

[7] 3. The delivery order was insufficient on its face. Plainly, such an order to comply with the terms of the letter of credit must have been an order for the delivery of goods which had been landed and weighed. It was objected that the goods were on the ship and that objection was good. In order to be effective, it was necessary that the goods should not be subject to any control, governmental or otherwise.

That there was still governmental control is apparent from the provisions of U. S. R. S. § 2882 (Comp. St. § 5574), supplemented by Treasury Regulation Article 1078. See, also, Treasury Regulations 245, 265, and 617, which apply to this as well as the larger draft.

Other reasons in support of the judgment have been advanced by defendant. These we have refrained from discussing because not necessary to decision.

We think on the grounds stated, supra, that there was no question for the jury, and that the dismissal of the complaint was right.

Judgment affirmed.