Thomas F. Judge, Appellant, v. Adolph Bergman et al., Appellees.

### Gen. No. 18,957.

1. SANITARY DISTRICT—*when system intercepting sewage proper adjunct.* Where it is the purpose of a channel of the Sanitary District of Chicago to prevent the contamination of the waters of Lake Michigan and the water supply of cities within the district by sewage and the sewage of a city within the district flows into the lake, a system of conduits, sewers and pumping stations constructed and maintained within the city by the district, which intercepts the sewage and conveys it to the channel after it has been collected through the sewers of the city, is such an "adjunct" and "addition" to the channel as is authorized to be constructed by the Act of 1903, and the construction cannot be enjoined on the ground that such system is a local improvement which must be paid for by the city.

2. SANITARY DISTRICTS—*construction of channel of sufficient capacity does not exhaust power.* That the Sanitary District of

Chicago has constructed a channel of sufficient capacity to carry off the drainage and sewage of cities within the limits of the district as extended by the Act of 1903 does not exhaust its power under such act to construct an intercepting sewerage system in a city as an "adjunct" which will cause the channel to accomplish its purpose.

3. MUNICIPAL CORPORATIONS—*construction of powers.* The principle that the powers of municipal corporations must be found in acts granting such powers, and that any fair, reasonable and substantial doubt as to the existence of a power is resolved against the corporation, does not authorize the courts to ignore a whole clause of a statute couched in plain and simple language, unless entirely inconsistent with the objects and purposes of the statute.

4. STATUTES—*construction.* It is the duty of a court in construing a statute to give effect, if reasonably possible, to every clause, sentence and word in the statute.

5. SANITARY DISTRICTS—*act authorizing construction of adjunct to channel.* In construing the Act of 1903 to determine whether an intercepting sewerage system constructed by a sanitary district within a city is an "adjunct" and "addition" to a channel within the meaning of such act, the legislative intent sufficiently appears from the language of the act without the aid of a consideration of suggested consequences if the sanitary district be held not to have the authority to construct such system.

6. MUNICIPAL CORPORATIONS—*power to construct sewers.* The powers given cities to construct sewers by the Outlet Sewer Act of 1910 and the Local Improvement Act of 1897 and the procedure prescribed apply only to such local improvements as can be made and paid for by special assessment or special taxation.

7. MUNICIPAL CORPORATIONS—*test whether sewer can be built by special assessment.* Whether a city can, under the Local Improvement Act of 1897 or the Outlet Sewer Act of 1910 construct an outlet sewer of the same nature and purpose as is proposed to be constructed by a sanitary district as an "adjunct" or "addition" to a channel, depends upon the question whether it is in fact such a local improvement as may be constructed by special assessment, and the test is whether the proposed improvement will enhance especially the value of adjacent property over and above the amount of general benefit to the whole municipality therefrom.

8. SANITARY DISTRICTS—*when power of city is not concurrent.* It cannot be contended as an objection to the construction under the Act of 1903 of an intercepting sewerage system in a city by a sanitary district as an "adjunct" and "addition" to a channel, that thereby two municipalities will be vested with the same power over the same subject at the same time and for the same purpose.

Appeal from the Circuit Court of Cook county; the HON. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1912. Affirmed. Opinion filed December 19, 1912.

**Statement by the Court.** Appellant, as a resident and taxpayer of the Sanitary District of Chicago, filed his bill of complaint in the Circuit Court of Cook County to enjoin the appellees, who constitute the board of trustees of said district, from "constructing, erecting and maintaining" a proposed "system of conduits, sewers and pumping station" in the City of Evanston, and from using or expending any of the corporate funds of said district for the same or for any part of the cost thereof, upon the. alleged ground that the proposed system is neither a "channel, drain, ditch or outlet for carrying off and disposing of the drainage (including the sewage)" of said district, nor a necessary "adjunct or addition thereto" within the meaning of the statutes under which said district is acting, but "is purely an addition or supplement to the local sewer system of the City of Evanston" and a local improvement "for the handling and disposition of the local sewage" of that city. Appellees filed their joint and several answer to the bill, admitting their purpose to construct and maintain the "system of conduits and pumping station" as described in the bill of complaint, but denying the conclusions charged in the bill, and averring that the main purpose of constructing the main channel and the "North Shore Channel" of the Sanitary District was to furnish an outlet "so that the sewage and drainage of the Sanitary District of Chicago should be carried away from Lake Michigan" into which the same had previously been discharged, and thereby to prevent the pollution and contamination of the water supply of the cities within the corporate limits of said Sanitary Districts; that the City of Evanston has a complete system of sewers, through which all the sewage and drainage of said city is now discharged directly into Lake Mich-

igan, and that the effect thereof is to contaminate the water supply, not only of said City of Evanston, but also the water supply of the City of Chicago, and of all the villages north of Evanston as far as Glencoe; that the City of Evanston "is without funds or the legal power to secure funds for the construction of such works as may be necessary to carry away the sewage of said city;" that the system of conduits and pumping station described in the bill of complaint "constitute such adjuncts and additions to said north shore channel as are necessary and proper to cause said north shore channel to accomplish the end for which it is designed in a satisfactory manner;" that the sole purpose of their construction is to dispose of the sewage of the whole City of Evanston after it has been collected through the sewers of that city, and thereby to protect the water supply of the whole Sanitary District "against the contaminating and polluting effects of the sewage of said City of Evanston;" and that "said works will not provide any sewers, drainage or means for the disposal of sewage from individual lots." A replication to said answer was filed. The case was heard upon these pleadings and a stipulation of facts, and a decree was entered dismissing the bill for want of equity. The complainant appeals.

By the stipulation of facts it was agreed in substance as follows: That complainant is a citizen, a voter and a taxpayer of said Sanitary District; that defendants are the trustees thereof; that the "main channel" of the district was completed in 1900, and that its effect was to change the course of the Chicago River so that it now flows away from Lake Michigan and discharges into the Desplaines River at Lockport, affording an outlet in that direction for the drainage and sewage of the City of Chicago, which formerly was discharged into the lake; that by the Act of the General Assembly of May 14, 1903, said district was enlarged so as to include the City of Evanston, and the Villages of Wil-

mette, Gross Point, Kenilworth, Winnetka and Glencoe on the north, and others on the south; that thereafter said district constructed a channel or drainage ditch known as the "North Shore Channel" extending from the north branch of the Chicago River to a point on the shore of Lake Michigan near the boundary line between Evanston and Wilmette, "for the purpose of furnishing an outlet for the drainage and sewage of the City of Evanston, the Village of Wilmette and other villages lying to the north of the City of Chicago," which channel runs through the northwestern portion of Evanston, and to provide for a sufficient flow of water for said channel, a pumping station has been installed at the lake end of the same; that said channel "is of sufficient capacity to carry off and divert into the north branch of the Chicago River and thence into said main channel all of the drainage and sewage of the Village of Wilmette, the City of Evanston, and all other villages lying north of the City of Chicago, when such drainage and sewage is diverted into said north shore channel;" that the City of Evanston has a shore line of approximately three and one-half miles along Lake Michigan, is from one and a half to two miles in width, with a population of over 25,000, and on and prior to May 23, 1912, had and now maintains an extensive system of sewers through which the sewage and drainage of that part of the city which lies south and east of the north shore channel are discharged directly into Lake Michigan; that the effect of this is to pollute and contaminate the water of the lake, and "that at times said contaminative effect extends as far south as to include a part of the water supply of the City of Chicago, and as far north as to include the water supply of some of the municipalities lying north of said City of Evanston;" that Lake Michigan is the source of the water supply of almost all of the people of the Sanitary District; that the total assessed valuation of all taxable property within the limits of the City of Evanston for the

year 1911 was $11,021,698, and its total indebtedness, including $146,100 of bonds, is $356,100; that on May 23, 1912, appellees, as trustees of said Sanitary District, passed an order directing the chief engineer of the district to prepare detailed plans and specifications for the construction of a system of intercepting sewers and conduits at an estimated cost of $405,000, and that they are about to construct the same at the sole expense of said Sanitary District; that the plans for said work provide for the construction of a pumping station on the lake front in Evanston for the purpose of pumping sewage coming from the lower parts of the city along the lake front to such an elevation that it can flow into the north shore channel of said district, "it being impossible to divert said sewage into said north shore channel except by pumping the same;" that the "proposed conduits are three feet in diameter at their southern extremities and gradually increase in size until said conduit is ten feet in diameter;" that "the sole function of the works covered by said order of May 23, 1912, and shown in heavy red lines on said complainant's exhibit 1, is to receive from the sewers built and maintained by the city of Evanston as shown on said exhibit 1, the sewage before it is discharged into the waters of Lake Michigan, and to convey the same into said north shore channel." A map attached as "Exhibit 1" shows in small lines and figures what seems to be a practically complete system of sewers covering the whole City of Evanston, the main lines of which run east and discharge into Lake Michigan. Said map also shows in heavy red lines the location and direction of the proposed conduits. Two branch lines are thus shown, beginning in the southern part of the city, one running north along the lake shore and the other further west, intercepting the existing sewers. These branch lines meet near the pumping station, from which a single larger conduit proceeds in a north and westerly direction to the north shore channel.

CALHOUN, LYFORD & SHEEHAN, for appellant.

JOHN C. WILLIAMS, for appellees.

MR. JUSTICE FITCH delivered the opinion of the court.

By section 7 of the Act of 1889, under which the Sanitary District of Chicago was incorporated, it is provided (Hurd's Stat. 1909, p. 405):

"The board of trustees of any sanitary district organized under this act shall have *power to provide for the drainage of such district* by laying out, establishing, constructing and maintaining one or more main channels, drains, ditches and outlets for carrying off and disposing of the drainage (including the sewage) of such district, together with such adjuncts and additions thereto as may be necessary or proper to cause such channels or outlets to accomplish the end for which they are designed in a satisfactory manner."

After the organization of said Sanitary District the legislature, in 1903, passed another act extending the corporate limits of such district so as to embrace and include therein additional territory to the north and to the south of the same; and by section 2 of that act (Hurd's Stat. 1909, p. 411) it was provided:

"The board of trustees of said sanitary district shall have the *right to provide for the drainage of the additional territory* added to said sanitary district by this act by laying out, establishing, constructing and maintaining one or more channels, drains, ditches and outlets for carrying off and disposing of the drainage (including the sewage) of such district, *together with such adjuncts and additions thereto as may be necessary or proper to cause such channels or outlets to accomplish the end for which they are designed in a satisfactory manner.*"

It was stipulated that the Sanitary District of Chicago constructed its main channel in pursuance of the authority granted by the Act of 1889, and constructed what is known as the "North Shore Channel" in pur-

suance of the authority granted it by the Act of 1903, above quoted, and that the latter is of sufficient capacity to receive and carry off all the drainage and sewage of the City of Evanston and the villages to the north within the extended limits of the Sanitary District, when the same shall be diverted into said north shore channel.

The sole question raised or discussed in the briefs and arguments of counsel is whether the system of conduits or intercepting sewers and pumping station described in the bill of complaint are "adjuncts" or "additions" to the north shore channel of the Sanitary District of Chicago, within the meaning of those terms as used in the above quoted provisions of the Sanitary District acts.

Counsel on both sides cite and rely on the decision of the supreme court in the case of City of Chicago v. Green, 238 Ill. 258, in support of their respective contentions. That case was a proceeding brought under the Local Improvement Act of 1897 for the purpose of levying a special assessment to pay the cost of constructing a brick sewer in Kedzie Avenue from West Seventy-First Street north to the main channel of the Sanitary District. The appellant, Green, objected to the assessment upon the ground that the proposed sewer was an "adjunct" or "addition" to the main channel of the Sanitary District and that therefore the power to construct the improvement by special assessment was vested in the board of trustees of that district and not in the city council of the City of Chicago. The supreme court, in discussing that question quoted at length from its previous opinions in Wilson v. Board of Trustees, Sanitary Dist., 133 Ill. 443, and People v. Nelson, 133 Ill. 565, and then said (p. 267):

"Considering the opinions in those cases, especially in connection with the dissents filed in both, it is apparent that this court did not then consider that the

sanitary district act was intended to turn over to the corporate authorities of the district the control of *all of the ordinary sewers and drains* necessary to drain the territory within its boundaries, but rather that the law was enacted for the purpose of constructing a main channel or *outlet* for all the sewers and drains of the various municipalities within the district, and to build such adjuncts and additions and auxiliaries as a part of said main channel as would make it possible to connect all such drains and sewers of the various municipalities with said main channel."

Then, after reviewing the contemporary circumstances and historical facts which led to the enactment of the Sanitary District Act, the opinion concludes (p. 275):

"The words 'adjunct' and 'addition,' as used in this act, mean simply *auxiliary channels to bring the sewage and drainage from the various sewers and systems of sewers of the municipalities in the limits of the sanitary district into the main channel of the sanitary district.* It was not intended that the sanitary district should be charged with and have the authority of constructing and maintaining *local improvements for the local drainage and sewage* of lands and property, *such as the one here in question.*" (Italics ours.)

In its review of the history of the legislation in question, the court said (p. 270):

"These reports and discussions contain frequently the words 'main drainage system,' '*outlet* channel,' '*intercepting sewers,*' and other terms which indicate clearly that it was an *outlet for the sewage,* and not the building of *ordinary sewers,* that was under consideration."

On page 273, the opinion refers to an act passed in 1899, authorizing cities of 100,000 population and under to construct outlet sewers, and says of that act:

"The legislature recognized that Chicago was the only city in the state that had over 100,000 people, and therefore the Act of 1899, in its practical effect, applied to all cities in the state other than Chicago, and

was evidently passed to give to the other cities *the same power to build outlet sewers that was provided by the sanitary district act* for Chicago and the other municipalities within the limits of the sanitary district of Chicago.'' (Italics ours.)

It would seem clear from these quotations from the opinion of the court in the Green case, *supra,* and especially from the language we have italicized, that the supreme court did not hold in that case that the Sanitary District of Chicago has no power to build a sewer *of any kind or for any purpose.* The proposed sewer there under consideration was purely a local improvement—an ordinary sewer such as has been built by special assessment for years, designed to receive and carry off the sewage and drainage from the houses and lots within the limits of a specified sewer-assessment district comprising only a small fraction of the total area of the City of Chicago, and affording special sewerage facilities and special benefits to the property in the assessed district. Hence the only question directly involved under the facts of that case, so far as the powers of the Sanitary District are concerned, was as to the power of the board of trustees of that district to build *that kind of a sewer.* It seems apparent that the court, in determining that question, recognized the fact that there was, or might be, a material distinction in this respect between the power to build such a sewer and the right and power under the Sanitary District acts to build an *outlet* sewer such as described in the Outlet-Sewer Act of 1899, or an *intercepting* sewer, designed for the sole purpose of bringing the accumulated drainage and sewage of a completed system of local sewers from the present discharging point thereof to and into one of the main channels of the Sanitary District. It is the right and power to build the latter kind of a sewer that is here involved. It will be noted from the statement of facts preceding this opinion that it was expressly stipulated that ''the sole function'' of the work proposed ''is to

receive from the sewers built and maintained by the City of Evanston * * * the sewage before it is discharged into the waters of Lake Michigan, and to convey the same into said north shore channel." By this stipulation all question as to the character of the sewer in question is removed. Its agreed character is that of an intercepting sewer or conduit and it is so called and treated in the briefs and arguments of counsel.

If the trustees of the Sanitary District had ordered an open channel to be constructed for the same purposes, and along the same route, as the proposed intercepting sewer, the "auxiliary channel" so ordered would have come squarely within the meaning of the words "adjunct" and "addition" as those words were defined in the Green case, *supra*. If the trustees had the power to construct an open channel as an adjunct or addition to the north shore channel, we are unable to find any good reason for any claim that they have not the power to "accomplish" the same "end" in a more "satisfactory manner" by constructing an underground canal or intercepting sewer for the same purpose. Indeed, on the oral argument made in this court, appellant's counsel conceded that if an open channel might thus be constructed, the right of the appellees to substitute an underground canal could not reasonably be denied.

It is, however, contended that having constructed a channel, viz.: the north shore channel, of sufficient *capacity* to carry off all the drainage and sewage of the City of Evanston and of all the villages to the north within the limits of the district as extended by the Act of 1903, the power of the trustees was thereby exhausted and their duty to the public fully performed. If this were true, then that part of the Act of 1903 which gives the trustees power "to provide for the drainage of the additional territory added by this act" by constructing not only "one or more channels," etc., but also "such adjuncts and additions thereto as may

be necessary or proper to cause such channels or outlets to accomplish the end for which they are designed in a satisfactory manner," is meaningless and of no effect whatever. While it is true that the powers of municipal corporations must be found in the legislative act or acts granting such powers, and that "any fair, reasonable and substantial doubt surrounding the existence of power is resolved by the courts against the corporations, and the power denied" (Dillon on Municipal Corporations (5th Ed.), sec. 237), yet this principle does not authorize the courts to ignore a whole clause of a statute, couched in plain and simple language, unless it is entirely inconsistent with the objects and purposes of the statute. In the construction of statutes, it is the duty of the courts to give effect, if reasonably possible, to "every clause, sentence and word in a statute." McReynolds v. People, 230 Ill. 623, 633. "Statutes and contracts should be read and understood according to the natural and most obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation." Chudnovski v. Eckels, 232 Ill. 312, 317. "The statute should be so construed as to give a sensible and intelligent meaning to every part and to avoid absurd and unjust consequences." People v. Sholem, 238 Ill. 203, 208.

In support of the power claimed by the trustees of the Sanitary District under this Act of 1903, their counsel have also suggested some of the consequences that might flow from the construction contended for by the appellant's counsel. It is said that one of the important, if not the most important, objects of the Sanitary District acts, was to prevent the pollution of the water supply of the territory included in said district, and that if the trustees have not the power to do the work of connecting the several sewerage systems in the district with the channels of the district, the contaminating discharges of sewage into the lake

will necessarily continue until each and every municipality within the district shall acquire the means to pay for such connections or shall be willing, if able, to make and pay for the same. It is pointed out that even if willing to do so, the statutory indebtedness-limit of such municipalities is an insuperable obstacle precluding them from making such connections with funds derived from general taxation; that such connections are in no sense local improvements such as could be built by special assessment; and that until ways and means are found to overcome these and other like difficulties, the expensive north shore channel, designed for the very purpose of receiving the discharges from the existing sewer-systems, would remain a useless ditch, while the pollution of the drinking waters of the lake would continue unabated and practically unabatable. But while consequences such as these are undeniably possible and perhaps are even probable, yet they are important here only as bearing upon the question of legislative intent in enacting the provision giving to the trustees of the Sanitary District the power to build and maintain such adjuncts and additions to its channels as to cause the same to satisfactorily "accomplish the end for which they are designed." We think the legislative intent sufficiently appears from the language itself of the acts in question without the aid of any consideration of the suggested consequences, though both lead to the same conclusion.

It is urged, however, that in the recent case of City of Berwyn v. Berglund, 255 Ill. 498, the supreme court extended the doctrine of the Green case so as to make it apply not only to an ordinary sewer, but to an outlet sewer of practically the same kind as the one here involved. We think this contention proceeds upon a misapprehension of the facts in that case, or a failure to recognize the well-settled distinction between local improvements, such as may be constructed by special assessment, and general public improvements which

cannot be built by special assessment. The proposed improvement in the Berwyn case was in the first class. It is true that it had an outlet extending beyond the city limits to the channel of the Sanitary District, but the power of a city or village to construct that kind of an outlet by special assessment as part of a local sewer-system, was sustained as far back as 1889, in the case of Shreve v. Town of Cicero, 129 Ill. 226, and definitely settled in 1892 in the case of Maywood Co. v. Village of Maywood, 140 Ill. 216. The principle of these cases was enacted into the statutory law of the state without substantial change by the Outlet-Sewer Act of 1899, and the recent substitute therefor, approved March 8, 1910 (Session Laws, 1910, p. 41). The decision in the Berwyn case therefore, merely follows the prior ruling of the Green case "and previous cases," as the opinion of the court expressly states.

It must be borne in mind that both the Outlet-Sewer Act of 1899 and the Local Improvement Act of 1897 are special assessment acts. The powers given, and the procedure prescribed, by those acts apply only to such local improvements as can be made and paid for by special assessment or special taxation. With this fact in mind, the distinction between such improvements as were involved in the Green and Berwyn cases, *supra,* and the intercepting sewer and pumping station here in question, seems clear and manifest. The improvement here proposed has none of the characteristics of a local improvement, but is a general public improvement, designed not for any purpose of local benefit to property but for the general public benefit of the whole Sanitary District, the protection of the water supply and the preservation of the public health. It is such an "adjunct" or "addition" to the north shore channel of the Sanitary District as is not only necessary and proper to cause such channel to satisfactorily accomplish its purpose, but is absolutely essential to prevent a total failure of such channel to accomplish its purpose.

Whether the City of Evanston could build the same kind of an outlet under the Local Improvement Act or the Act of 1910 depends on the question—which is one of fact—whether it is in fact such a local improvement as may be constructed by special assessment. The test in such cases is whether the proposed improvement will enhance, specially, the value of adjacent property, over and above the amount of general benefits to the whole municipality therefrom. Northwestern University v. Village of Wilmette, 230 Ill. 80, 86. While it is alleged in the bill of complaint that the proposed plan is purely a local improvement, that averment is denied by the answer, and we find nothing in the stipulation of facts tending to prove the allegation. So far as the description of the improvement affects that question, it rather tends to refute than to support the averment, and the stipulation above referred to as to the function of the proposed improvement precludes the idea that it will enhance, specially, the value of adjacent property.

The argument that the construction of the Sanitary District acts contended for by appellees is open to the objection that thereby two municipalities would be vested with the same power over the same subject at the same time and for the same purposes, is, we think, fully answered by what has been already said.

The decree of the circuit court will be affirmed.

*Affirmed.*