[No. 11513.   Department Two. — September 28, 1886.]

JAMES   W.   HAMBLETON,   RESPONDENT,   *v.*   C.   C.
DUHAIN   ET   AL.,   APPELLANTS.

PUBLIC LANDS — INDEMNITY SCHOOL LANDS — DEFECTIVE SELECTION —
RIGHTS OF PURCHASER IN POSSESSION — INVALID HOMESTEAD ENTRY. —
The lands in controversy were indemnity school lands selected by the
state in lieu of a portion of a sixteenth section included within an Indian
reservation. The selection was subsequently canceled by reason of the
relinquishment by the United States of the reservation. Prior to the
cancellation, the grantors of the plaintiff purchased the lands of the state
in good faith, and a patent was issued to them. Ever since the date of
their purchase the plaintiff and his grantors have been in the actual pos-
session of the land, cultivating and improving it. Subsequent to the
cancellation, and while the plaintiff was so in possession, the defendants,
each of whom were qualified to make a homestead entry, applied to en-
ter different portions of the land under the United States homestead laws,
and afterwards entered thereon, built houses, and exercised other acts of
ownership over the same. The action was brought to quiet the title of
the plaintiff against the homestead claims of the defendants. *Held*,
that the title acquired by the plaintiff, even conceding it to be bad as
against the United States, must prevail as against the defendants, be-
cause the latter, having forcibly entered upon the land while in the
actual possession of the plaintiff, could not acquire any rights under the
homestead laws.

ID. — DEFECTIVE SELECTION CURED BY BOOTH ACT. — *Held further*, that the
defect in the selection of the lands as indemnity school lands was cured
by section 2 of the act of Congress of 1877, commonly called the Booth
act.

APPEAL from a judgment of the Superior Court of
Yolo County, and from an order refusing a new trial.

The facts are stated in the opinion.

*J. H. Craddock*, for Appellants.

*C. H. Garroutte, R. Clark*, and *John Lambert*, for Re-
spondent.

FOOTE, C. — This was an action to quiet title to certain
lands which the plaintiff claimed to have acquired, me-
diately through various conveyances, from the state of
California, by its patent.

The cause was tried by the court, a jury having been expressly waived. Judgment was rendered for the plaintiff, and from that and an order denying the defendants a new trial, they have appealed. The findings of fact are as follows: —

"1. That the tract of land in dispute, to wit, the southeast quarter and the southeast quarter of the southwest quarter of section 1, and the northeast quarter of the northwest quarter of section 12, township 9 north of range 2 west, Mount Diablo meridian, was applied for by the locating agent of the state of California to the general government, in lieu of the northwest quarter and north half of the southeast quarter of section 16, township 24; that the location of and the application for this tract was made in the year 1861, and in that year the selection was approved and accepted by the register of the United States land-office, and by the governor of the state of California, and was afterward, in the year 1873, duly listed by the United States to the state of California; that at the time of the location of application for selection, approval, and acceptance of this tract of lieu land the basis of the lieu, the said northwest quarter and north half of the southeast quarter of section 16 was covered by an Indian reservation, known as the Nome Lackee Indian reservation; that the said Indian reservation was relinquished by the government of the United States in the year 1870; that prior to the relinquishment of the said Indian reservation, full payment had been made for this lieu land to the state of California, by those through whom plaintiff claims, and a certificate of purchase issued by said state; that in the year 1883 the said lieu or indemnity land was canceled by reason of the relinquishment by the general government of the Indian reservation as the basis of the said tract of lieu land.

"2. That one E. S. Drew, before the cancellation of this indemnity land, having paid the purchase-money

for this tract of land, received from the state of California a certificate of purchase therefor, and afterward assigned the said certificate of purchase to one M. A. Woods; that the said M. A. Woods dying before the issuance of letters patent to him by the state of California, for the said land, the same were issued to the heirs of the said M. A. Woods; that the said letters patent are in due and proper form, and pass to the said heirs the said tract of lieu land herein described.

" 3. That plaintiff by direct conveyances from the heirs of M. A. Woods and their grantees is in the actual possession, and was at the time of the entry of defendants hereinafter referred to and found in the actual possession of the said tract of land; that the said conveyances are in due form, and are and were duly recorded in the office of the recorder of Yolo County; that in the month of March, in the year 1877, plaintiff, while in the actual possession of the whole of this tract of land, held under his conveyance an undivided one third of the same; that in the year 1879, while in the actual possession of the whole, plaintiff held under his conveyance an undivided one third of said land, and in the year 1882 and subsequently, still being in the actual possession of the whole, he held the remaining third of said land under his conveyance as aforesaid.

" 4. That for about twelve years next preceding the commencement of this action, plaintiff was in the actual and undisturbed possession of the whole of the said tract of land, either as tenant of the patentees of said land or their grantees, or holding the same by virtue of his conveyances as aforesaid, except during the time such possession was disturbed by the entry of defendants; that continuously during this period of time plaintiff cultivated and farmed the said tract of land, growing thereon crops of hay, grain, etc., and has improved the same by the erection of a building and fences thereon; and has from and since the month of September, 1879, hitherto

paid the state and county taxes on the said tract of land.

"5. That on the twelfth day of May, 1884, defendants and each of them were qualified and competent to make homestead entries under the homestead laws of the United States; that on said date C. C. Duhain, one of the defendants, filed his application with the register and receiver of the United States land-office, at Marysville, California, to enter a portion of said tract of land under the homestead laws of the United States, the said portion being the southeast quarter of section 1, township 9, of said tract; that on the same date James Whalen, one of the defendants, filed his application with the said register and receiver to enter the other portion of said tract of land under the homestead laws of the United States, being the southeast quarter of the southwest quarter of section 1, and the northeast quarter of the northwest quarter of section 12, township 9; that defendants took and performed all the preliminary steps incidental to their several homestead applications.

"6. That after having filed their homestead applications as set forth in the above finding, defendants entered upon the said lands, and each of them erected a small house thereon, dug a well, and exercised acts of ownership over the same; that at the time of the entry of defendants upon the said lands as aforesaid, the same were inclosed with a good and substantial fence, with a dwelling-house erected thereon; that both the fence and the house had been previously built by plaintiff; that at the time of said entry plaintiff had growing on the larger portion of said tract of land a crop of wheat, and on the other portion a crop of hay; and at said time was in the actual possession of the whole of said tract, claiming title to the same through his several conveyances from the patentees of the state of California and their grantees.

"7. That the defendants' claim of title to the said tract

of land is founded solely upon their application to enter the same under the homestead laws of the United States."

It will be readily perceived that the defendants, as pre-emptioners, are not in a situation to claim any priority with the United States government which would entitle them to be heard in a court of equity, to deny the plaintiff's right to have his title quieted under the state patent, even if the government of the United States, by its proper officers, might, if so minded, initiate proceedings to have that patent canceled, for the entry and settlement of the defendants was clearly unlawful. They entered without permission upon premises inclosed by a fence, which had been continuously for years in the undisturbed possession of the plaintiff, on which he had made substantial improvements and built a house, and upon which he had long cultivated, without hindrance or interference from any source, crops of grain and hay. "The generosity by which Congress gave to a settler the right of pre-emption was not intended to give him the benefit of another man's labor, and authorize him to turn that man and his family out of their home. The right to make a settlement was to be exercised on unsettled land; to make improvements on unimproved land." (*Atherton* v. *Fowler*, 96 U. S. 515.) "No right of pre-emption can be established by a settlement and improvement on a tract of public land when the claimant forcibly intruded upon the possession of one who had actually settled upon, improved, and inclosed the tract, and such intrusion, though made under pretense of pre-empting the land, is but a naked, unlawful trespass, and cannot initiate a right of pre-emption." (*McBrown* v. *Morris*, 59 Cal. 74.) This being so, it follows that the defendants are utter strangers to any rights which the government of the United States may have to the lands in dispute, and cannot be heard to object to the quieting of plaintiff's title.

The fact that they are endeavoring to have the land-

officers of the United States government reverse a former decision, which declared the title to this land to be in the state—the plaintiff's patentor—cannot give them any right to prevent the plaintiff from succeeding, as against them in this action. For according to the findings, they being trespassers, cannot legally be heard to claim title from the United States, even if the title to the land is yet vested in the United States. So that, granting all the defendants' claim, viz., that the title of the lands in dispute yet remains in the government of the United States, and conceding that the patent from the state, through which the plaintiff claims, does not convey to him a title, as against the United States, nevertheless the defendants have no privity of claim, right, or of title with the latter, which permits them to dispute the plaintiff's right.

But admitting that the lands in dispute when selected by, and certified to, the state, were improperly so certified, and that the state, as against the United States government, was not entitled to them as *lieu* lands, yet by virtue of section 2 of the act of Congress of 1877, commonly called the Booth act, such selections were made valid. For it is there provided: "That where indemnity school selections have been made and certified to the state, and said selections shall fail by reason of the land in lieu of which they were taken not being included within such final survey of a Mexican grant, or are otherwise defective or invalid, the same are hereby confirmed, and the sixteenth or thirty-sixth sections, in lieu of which the selection was made, shall, upon being excluded from such final survey, be disposed of as other public lands of the United States." (19 U. S. Stats. 268.)

The use of the words "or are otherwise defective or invalid," shows that the intention of Congress in enacting the law, of which they form an important part, was to cover any and all defects in indemnity school selections which might have been made and certified to the state.

We are of opinion, therefore, that the defect in the selection and certification under consideration is such a defect as comes clearly within the letter as well as the intent of the statute, which is a curative act, designed to quiet the possession and confirm the claim of those who in good faith purchase from the state, thinking they thereby got a good title, but who in law did not, and which upon well-settled principles should be liberally construed. (*Martin* v. *Durand*, 63 Cal. 39–43.)

The findings are sustained by the evidence, and no prejudicial error appears in the record.

We are therefore of opinion that, considering the *status* occupied by the parties to this action towards each other, the judgment and order should be affirmed.

Searls, C., and Belcher, C. C., concurred.

The Court. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.