[Crim. No. 1284. Second Appellate District, Division Two.—December 31, 1925.]

# THE PEOPLE, Respondent, v. RALPH L. McKEAN, Appellant.

[1] CRIMINAL LAW — OFFERING SERVICES TO PRODUCE MISCARRIAGE — MEANS USED IN MAKING OFFER — PLEADING — INSUFFICIENT INFORMATION.—An information intended to charge the defendant with offering his services to assist in the accomplishment of a miscarriage in violation of section 317 of the Penal Code, but which fails to charge that the defendant offered his services by any notice, advertisement, or other like means, does not state a public offense.

[2] ID. — INSUFFICIENT INFORMATION — FAILURE TO FILE DEMURRER — JUDGMENT — APPEAL — REVERSAL. — If the information fails to charge, and if the evidence fails to prove, that defendant committed any public offense known to the laws of this state, the defendant is entitled to a reversal on appeal of the judgment of conviction notwithstanding he failed to file a demurrer in the court below.

[3] ID.—OMISSION OF ESSENTIAL FACT—FAILURE TO DEMUR—WAIVER. Where there is an absolute omission of a fact which the statute makes an essential ingredient of the offense, the defect is one of substance and not merely one of form; and so radical a defect is not waived by neglecting to file a demurrer, but may be raised at any time.

[4] ID. — CONSTRUCTION OF SECTION 317, PENAL CODE — MEANING OF TERM "OR OTHERWISE"—REFERENCE TO PRECEDING TERMS.—The term "or otherwise," in the provision of section 317 of the Penal Code that every person who wilfully offers his services "by any notice, advertisement, or otherwise" to assist in the production or facilitation of a miscarriage or abortion is guilty of a felony, should be construed as signifying other like means, i. e., other means which are of the same general nature or class as those notices which are akin to advertisements.

[5] ID.—STATUTORY CONSTRUCTION—EJUSDEM GENERIS.—By the rule of construction known as "ejusdem generis," where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons

2. See 8 Cal. Jur. 500.
3. See 8 Cal. Jur. 500; 2 R. C. L. 88.
5. See 23 Cal. Jur. 756; 25 R. C. L. 996,

or things of the same general nature or class as those enumerated; and this rule is particularly applicable to penal statutes.

[6] ID. — EJUSDEM GENERIS — LEGISLATIVE INTENT. — The maxim *ejusdem generis* is only a rule of construction, to be applied as an aid in ascertaining the legislative intent, and such rule does not control where it clearly appears from the statute as a whole that no such limitation was intended.

---

(1) 1 C. J., p. 318, n. 3.    (2) 17 C. J., p. 55, n. 92, p. 60, n. 52. (3) 31 C. J., p. 823, n. 29.    (4) 1 C. J., p. 314, n. 54 New; 2 C. J., p. 294, n. 7; 29 Cyc., p. 1065, n. 16, p. 1113, n. 1; 36 Cyc., p. 1118, n. 25, 26.    (5) 19 C. J., p. 1255, n. 16; 36 Cyc., p. 1119, n. 36, p. 1120, n. 37, 38, 39, 40.    (6) 36 Cyc., p. 1121, n. 41, 42.

APPEAL from a judgment of the Superior Court of Riverside County and from an order denying a new trial. William H. Ellis, Judge. Reversed.

The facts are stated in the opinion of the court.

C. W. Benshoof and Estudillo & Schwinn for Appellant.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

FINLAYSON, P. J.—Defendant was charged with offering his services to assist in the accomplishment of a miscarriage. It was the theory of the prosecution that the charge as laid stated all the essential elements of the offense denounced in the concluding clause of section 317 of the Penal Code. Whether the information does charge every essential ingredient of that offense is the principal question presented by this appeal. Defendant, who was found guilty as charged, appeals from the judgment of conviction and from an order denying his motion for a new trial.

Section 317 reads: "Every person who wilfully writes, composes or publishes any notice or advertisement of any medicine or means for producing or facilitating a miscarriage or abortion, or for the prevention of conception, or who offers his services *by any notice, advertisement, or otherwise,* to assist in the accomplishment of any such purpose, is guilty of a felony." (Italics ours.)

---

6.  See 23 Cal. Jur. 756.

[1] The charging part of the information is as follows: "The said defendant on or about the 24th day of December, 1924, at the said County of Riverside, State of California, and before the filing of this information, did wilfully, unlawfully and feloniously offer to Sanders Reynolds to produce and assist in the accomplishment of a miscarriage on Virginia Reynolds." It will be noticed that the information is barren of any charge that appellant offered his services by any notice, advertisement, or other like means. The evidence also fails to show that defendant offered his services by any of those means. Giving to the evidence a construction most favorable to the prosecution, it discloses no more than a mere oral offer by defendant, made directly to Sanders Reynolds, the husband of Virginia Reynolds, whereby defendant proffered his services to produce a miscarriage of the wife.

Appellant contends, and, as we think, rightly contends, that the information does not state a public offense. [2] The sufficiency of that pleading was not challenged in the court below by demurrer. Defendant, however, upon the conclusion of the People's evidence, moved the court to dismiss the case upon the ground that a public offense is not stated in the information. The motion was denied. If the information fails to charge, and if the evidence fails to prove, that defendant committed any public offense known to the laws of this state, then clearly appellant will be entitled to a reversal notwithstanding his failure to file a demurrer in the court below. [3] Where there is an absolute omission of a fact which the statute makes an essential ingredient of the offense, the defect is one of substance and not merely one of form. In such case the defect is not merely the failure to allege a necessary fact with sufficient certainty; it is a failure to charge any public offense whatever. So radical a defect is not waived by neglecting to file a demurrer, but may be raised at any time. (*People* v. *Smith,* 103 Cal. 563 [37 Pac. 516].) " . . . neither the neglect to demur or move in arrest of judgment can be deemed a waiver of an objection based upon the ground that the indictment or information does not state a public offense. Such an objection might be raised at any point in the progress of a case, or upon appeal." (8 Cal. Jur., p. 500.)

[4] Whether the information does omit the allegation of a fact necessary to constitute the offense defined in the concluding portion of section 317 depends upon the meaning to be ascribed to the words "or otherwise," in the provision that "Every person who wilfully . . . offers his services by any notice, advertisement, *or otherwise*, to assist in the accomplishment of any such purpose [i. e., in the production or facilitation of a miscarriage or abortion,] is guilty of a felony."

The section as a whole seems to be aimed against advertisements, i. e., advertisements of certain means for producing miscarriages or abortions or for preventing conception. Thus the first part of the section declares that "Every person who wilfully writes, composes or publishes any notice or advertisement of any medicine or means for producing or facilitating a miscarriage or abortion, or for the prevention of conception, . . . is guilty of a felony." This part of the section speaks of "medicine" or "means" for producing or facilitating miscarriages or abortions or preventing conception. Just what is here meant by the word "means" is not clear. It is possible that it may include surgical instruments. This first part of the section is directed against the writing, composition, or publication of such notices or advertisements as are designed to bring home to the public a knowledge of certain "medicines" or "means," i. e., a knowledge of such agencies as may be used at any place and by any person—by the woman herself, for instance—to bring about an abortion or a miscarriage or to prevent conception. The concluding part of the section, that under which it was sought to charge appellant, deals, not with medicines, drugs, instruments, etc., but with "services," i. e., an agency which necessarily must be exercised upon the body of the woman by another, viz., by the person offering his services. This part of the section makes it a crime for one to offer "his services" to assist in the accomplishment of any miscarriage or abortion. But a mere offer of services is not enough. More than that is required to bring the offerer within the terms of the offense denounced by the statute. He must offer his services by "notice, advertisement, or otherwise." Here, then, we have three classes of means for bringing to others a knowledge of the offer of services, one at least of which must be resorted to by the person offering his ser-

vices in order to constitute the crime denounced by that part of section 317 under which it was sought to charge appellant. These are: (1) an advertisement; (2) a notice; (3) other means. We say "other means," for the word "otherwise" signifies "other means."

The word "advertisement" has been defined as "a notice published in handbills or a newspaper." (2 Cor. Jur. 294.) The word also includes notice by posting or display on signboards. (Id.) In *Carter* v. *State,* 81 Ark. 37 [98 S. W. 704], the court says: "The many uses of the term 'advertise,' in its various forms, may be found in the Century Dictionary, from which this definition, the one most nearly reaching to the facts here, is taken: 'The act or practice of bringing anything, as one's wants or one's business, into public notice, as by paid announcement in periodicals, or by handbills, placards, etc., so as to secure customers by advertising.'" The idea underlying the word "advertisement" has reference not so much to the vehicle or instrumentality used for getting the notice before the public, as to the diffusion, or bringing home to the public, of the information or matter contained in the notice. (*Cincinnati* v. *Fenner,* 11 Ohio S. & C. P. Dec. 281, 287.)

The word "notice," in its broadest significance, doubtless includes any means whereby intelligence or knowledge is communicated. But according to the rule of interpretation "*noscitur a sociis,*" the word should be construed in connection with its associated word "advertisement," thus giving to each a kindred meaning. This conclusion is further strengthened by the consideration that the first part of the section refers to such "notice or advertisement" as may be written, composed, or published—i. e., the first part of the section refers to written, printed, or pictorial matter only. The word "notice," as used in both clauses of section 317, doubtless was intended to include such notices as are sent through the mail; also circulars left upon doorsteps, etc.

We think that the term "or otherwise," in the provision "Every person who wilfully . . . offers his services by any notice, advertisement, *or otherwise,* . . . is guilty of a felony," should be construed as signifying other like means, i. e., means which are of the same general nature or class as advertisements, or which are of the same general nature or class as those notices which are akin to advertisements.

[5] This construction is warranted by the rule *"ejusdem generis,"* which is stated in Cyc. as follows: "By the rule of construction known as *'ejusdem generis,'* where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. The particular words are presumed to describe certain species, and the general words to be used for the purpose of including other species of the same genus. The rule is based on the obvious reason that if the legislature had intended the general words to be used in their unrestricted sense they would have made no mention of the particular classes. The words 'other' or 'any other,' following an enumeration of particular classes, are therefore to be read as 'other such like,' and to include only others of like kind or character." (36 Cyc., pp. 1119, 1120. See, also, *Pasadena University* v. *Los Angeles County,* 190 Cal. 790 [214 Pac. 868].) In *Galveston Co.* v. *Gorham,* 49 Tex. 290, the supreme court of Texas, construing a statute of that state, says: "The word 'otherwise,' in that part of the sentence 'by sample, card or otherwise,' should be understood, as doubtless intended, to mean 'by other like means.' " In *Ex parte Williams,* 7 Cal. Unrep. 301 [87 Pac. 565], the district court of appeal for the third appellate district of this state had before it a *habeas corpus* proceeding, the petitioner wherein had been charged with carrying on a certain banking game, played by means of a slot-machine, "for . . . representatives of value, towit, cigars and tobacco," in alleged violation of section 330 of the Penal Code. That section makes it an offense to carry on any banking game, played with cards, dice, or any device, "for money, checks, credit *or other representative of value."* In holding that cigars and tobacco are not "other representatives of value" within the meaning of the statute, Mr. Justice Buckles said: "If the legislature was intending to prohibit all gambling with banking devices or by banking games played with cards, dice, or any device, it seems to us there would have been no limitation as now to money, checks, or credits, but the statement would have been for anything of value or that represents value. . . . The rule seems to be well established in the interpretation of statutes and clauses like the one under consideration that where

general words follow particular ones, the former are con-
strued as applicable to persons or things of the same kind,
class or nature." In *Rhone* v. *Loomis,* 74 Minn. 200 [77
N. W. 31], the court had under consideration a statute
which made it an offense to exclude any person, on account
of his race, color, or previous condition of servitude, from
"restaurants, barber shops, eating houses, *or other places of
public . . . refreshment."* In holding that saloons, or places
where intoxicating liquors are sold as beverages, are not
"places of public refreshment" within the meaning of the
act, the Minnesota supreme court says: "We concede that
the word 'refreshment' may include intoxicating liquors,
and that the words 'place of refreshment' may be used in
such a connection as to include a place where such liquors
are sold as a beverage. But here is a case where the legis-
lature has specifically enumerated, in a somewhat descend-
ing order according to rank or importance, every kind of
place of refreshment which was presently in mind to which
they intended the act to apply, but have omitted, apparently
purposely, to enumerate places where intoxicating liquors
are sold as a beverage. . . . We are of opinion that upon
these facts it is not permissible, under any proper appli-
cation of the doctrine of *ejusdem generis,* or what is com-
monly called 'Lord Tenterden's rule,' to extend the meaning
of the general words 'or other public place of refreshment'
so as to include places where intoxicating drinks are sold.
This rule, generally stated, is that where a statute or
document specifically enumerates several classes of persons
or things, and immediately following, and classed with such
enumeration, the clause embraces 'other' persons or things,
the word 'other' will generally be read as 'other such like,'
so that persons or things therein comprised may be read as
*ejusdem generis* 'with,' and not of a quality superior to or
different from, those specifically enumerated. [Citing au-
thorities.] The reason of this rule is that 'if the legisla-
ture had meant the general words to apply, without restric-
tion, it would have used only one compendious word.' " In
*State* v. *Dennison,* 60 Neb. 157 [82 N. W. 383], the statute
provided: "If any person shall open or establish, as owner
*or otherwise,* any lottery or game of chance in this state,"
etc. In construing the term "or otherwise," following the
word "owner," it was held that it should be restricted to

the meaning of "owner," or someone in similar or like capacity.

The rule *ejusdem generis* is particularly applicable to penal statutes. In *Matter of La Societe Francaise,* 123 Cal. 531 [56 Pac. 460], our supreme court says that "there is little, if any, controversy as to the maxim in its application to penal statutes." The supreme court of Missouri, speaking of the application of the doctrine in criminal cases, says that "as applied to penal statutes especially, it is only a humane doctrine, and accentuates the wisdom of the fathers when they objected to being punished for offenses which had not been declared to be offenses by the law." (*Ex parte Neet,* 157 Mo. 527 [80 Am. St. Rep. 639, 57 S. W. 1025].) See, also, *Ex parte Roquemore,* 60 Tex. Cr. 282 [32 L. R. A. (N. S.) 1186, 131 S. W. 1101], where the court quotes from *Ex parte Muckenfuss,* 52 Tex. Cr. 467 [107 S. W. 1131], as follows: "It has been held also that this rule [*ejusdem generis*] is especially applicable in the interpretation of statutes defining crimes and regulating their punishment." In this state the rule is given express statutory recognition, it being declared in section 3534 of the Civil Code that "Particular expressions qualify those which are general."

[6] It is true that the maxim *ejusdem generis* is only a rule of construction, to be applied as an aid in ascertaining the legislative intent, and that it does not control where it clearly appears from the statute as a whole that no such limitation was intended. But we venture to assert that no authority can be found where the general words "or otherwise," when following particular and specific words, have been construed as having their unrestricted sense where such a construction would cause the preceding particular words as well as the general words to become meaningless surplusage. And yet that is precisely the result which must inevitably follow if the words "or otherwise," as used in section 317, be given their full unrestricted meaning. That is to say, if the words "or otherwise" be not construed as meaning "other such like means," then the whole phrase "by any notice, advertisement, or otherwise" becomes mere barren verbiage, sterile of effect. This is so for the reason that every offer of one's services necessarily implies the giving of notice of some sort to the person to

whom the offer is made. To "offer to do a thing," says the court in *Morrison* v. *Springer*, 15 Iowa, 346, "is to bring to or before—to present for acceptance or rejection—to exhibit something that may be taken or received or not." See, also, *People* v. *Ah Fook*, 62 Cal. 494. Since the words "or otherwise," if used in their unrestricted sense, would embrace that notice of one's offer of his services which necessarily is included in the mere making of the offer, it seems clear that had it been the intention of the legislature to employ those general words without restriction it would have said no more than that it shall be an offense for one to offer his services to produce a miscarriage or an abortion, omitting entirely the provision to the effect that such offer, to be criminal, must be made by "notice, advertisement, or otherwise." Unless, therefore, the general term "or otherwise" be construed as *ejusdem generis* with the preceding particular and specific words, then the whole phrase "by any notice, advertisement, or otherwise" may as well be stricken from the statute as an impotent inutility.

While we are satisfied that the term "or otherwise," as used in this code section, is equivalent to the term "or other such like means," we do not find it necessary to decide, and we expressly refrain from deciding, the precise content of the words "or otherwise," i. e., the precise kind of notice which would satisfy their requirement. Suffice it to say that, for the reasons above stated, these words must be held to mean that the offer of services must be made through or by means of notice of some kind other than such as necessarily is involved in the mere act of making the offer. But here the information makes no attempt to charge that the offer of appellant's services was made by means of any notice of any kind whatsoever, save only such as necessarily is implied in the mere act of offering one's services.

The judgment and the order denying a new trial are reversed.

Works, J., concurred.

CRAIG, J.—I dissent. No rule is better established as an aid to statutory interpretation and construction than that known as *ejusdem generis*. On the other hand, its limita-

tions and exceptions are equally well recognized. To my mind, the instant case as charged and proved is unquestionably within the inhibition of section 317 of the Penal Code. The defendant personally and verbally solicited the opportunity to produce a miscarriage, and this the statute makes a criminal offense by the use of the words "or otherwise," following the provisions "who offers his services by any notice, advertisement."

A number of considerations, singly and each one supporting and corroborating the others, compel this conclusion. Because it is necessary for me to dissent from the opinion of my associates, I shall set forth these reasons at greater length than would otherwise be expedient. It will be observed that the sole reason for ruling that the defendant herein should not be held guilty is the asserted application of the *ejusdem generis* rule to the words "or otherwise," as used in this section of the Penal Code. Before accepting as final and as entitled to unquestioned obedience the authority of this rule, let us measure the scope of its application.

In the first place, it has no standing as against a positive provision of legislative enactment. Its only office is to aid the courts in determining the intent of the legislature, as expressed in any law which may be the subject of examination. (Lewis' Sutherland on Statutory Construction, sec. 437; *Willis* v. *Malon,* 48 Minn. 140 [31 Am. St. Rep. 626, 16 L. R. A. 281, 50 N. W. 1110].) If the meaning of the statute is clear, this rule has no right to receive the slightest consideration, but even when the statute is uncertain, other and more trustworthy aids are first applied, and will prevail when found to be in conflict with the rule *ejusdem generis.* (*State* v. *Woodman,* 26 Mont. 348 [67 Pac. 1118].)

I will now enumerate some considerations which constrain me to dissent, and then discuss each in some detail. (1) The language of the enactment, read in its ordinary sense, is so clear as to leave no room for construction. (2) When the purpose of the statute is considered its object would be only half achieved if a close and restricted construction be placed upon its language; but courts have no right to permit a blind devotion to the maxim *ejusdem generis* to interfere with the full accomplishment of the

manifest purpose of the legislature. (3) If the particular words exhaust the genus, there is nothing *ejusdem generis* left, and in such case we must give the general words a meaning outside of the class indicated by the particular words, or we must say that they are meaningless. In that case the rule would defeat its own purpose, and it will not be applied. (4) Courts will always refuse to limit or impede the operation and enforcement of statutes obviously intended to carry out public policy by the use of this rule, which is one of strict construction, but will recognize and remedy a known evil. (5) Where no reason exists for not giving effect to the general provision, and it is equally adapted to carry out the purpose of the law as is the special enumeration, the general term will not be discarded, but will be fully accepted and applied. (6) Not every enumeration of persons or things, followed by a more general term, constitutes a proper case for the application of this maxim. Where the preceding enumeration is not of individual things, the rule cannot be used. (7) Even if the rule *ejusdem generis* be applied, section 317 of the Penal Code would still penalize the defendant's offer to commit an abortion.

1. Of course, the entire object in interpreting any law is to discover the meaning intended to be conveyed and promulgated by the legislature. No rule of statutory interpretation is controlling except in so far as it accomplishes this purpose. The intent of the statute is the law. Therefore, we should first analyze the section to determine whether or not its intent is clearly expressed. It may be that there is little or no occasion to take into consideration the rule *ejusdem generis,* or any other rule for the interpretation of ambiguous statutes. A mere reading of the provision is sufficient to satisfy me that its object is to prevent the destruction of gestation against nature, as well as to make illegal the prevention of conception. This purpose it attempts to accomplish in conjunction with section 274 of the same code.

It is noteworthy that in the first part of section 317 the prohibition extends only as against notices and advertisements, whereas in the latter part, here under consideration, the words "or otherwise" are added, which comparison makes more emphatic the facts that the words "or otherwise"

were deliberately placed there and intended to refer to offers of services distinct from and in addition to those conveyed by notices or advertisements.

There is no better recognized rule than that words are usually to be taken and interpreted in their ordinary meaning (Civ. Code, secs. 1324, 1644). The words "or otherwise" commonly mean "or in any other way." "Otherwise" is defined by the Standard Dictionary as meaning "In a different manner, in another way, differently, in other respects"; by Webster, "In a different manner, in other respects"; by the Century Dictionary, "In a different manner or way, differently, in other respects." These definitions are quoted with approval in *Thompson* v. *City of Highland Park,* 187 Ill. 265 [58 N. E. 328], and in other cases. If we accept these authorities the statute is clear, and there is no ambiguity; it not only ʾpenalizes the act of any person who uses notices or advertisements in doing that which the statute inhibits, but makes it an offense to do the same thing "differently," "in any other way," and through the use of "any other means." In order to reject this construction we must resort to a rule of strict construction, and raise an issue where none before existed. Without reference to that rule, the statute is not even ambiguous. Under such circumstances, there is no warrant for giving it any consideration or weight. The mere fact that a general term is used after an enumeration of particulars does not necessarily even create an ambiguity so as to require construction.

In this case the legislature has itself precluded the courts from applying the rule *ejusdem generis,* because it has eliminated the reason advanced for its application in proper cases, to wit, that it will not be presumed that the legislature intended to make the special words previously employed meaningless by the use of a broader term comprehending such narrower words. It has eliminated this argument from consideration by employing the word "advertisement" after the word "notice," thus rendering "notice" unnecessary, because it is included in the word "advertisement." This it has done in the identical enumeration in which the words "or otherwise" are used. In the face of this demonstration of legislative intent the claim that the legislature will not be presumed to have in-

tended to render the special term meaningless by the use of a broader term is made entirely impossible. No presumption can stand against direct and positive evidence. Without doubt the purpose of the legislature in enacting this statute was to prevent the production of miscarriages and abortion; to this end it penalized the making of offers to assist in the commission of such wrongful acts. It seems quite apparent that in drafting this provision the means ordinarily used by persons who make a business of such practices was first in the legislative mind, and so the employment of notices and advertisements as a means of making the objectionable offers was prohibited. The narrower of these terms is first employed. A notice is a form of advertising; it is defined to be information, by whatever means communicated. (*United States* v. *Foote,* 25 Fed. Cas. 1140, No. 15,128.) To advertise is "to notify," to "inform," to "give intelligence to" (Ency. Dict.); before writing was developed, advertising was exclusively by criers and signboards (Ency. Amer., vol. 1); advertising may be by oral proclamation. (*Cincinnati* v. *Fenner,* 11 Ohio S. & C. P. Dec. 281, 8 Ohio N. P. 342); advertising has been called the medium or vehicle of persuasion. While advertising was originally by publication, the complete content of the word now involves exploitation, and thus while a notice involves nothing more than the giving of information, an advertisement conveys such information in a manner or by means to the end of persuading to do something, usually to buy. Having broadened the scope of the inhibition from notices to advertisements, the draughtsman of the law, apparently to make certain that no means of making obnoxious offers might be devised by which a culprit might escape through technical judicial construction, sought a still broader term, and employed the words "or otherwise."

At this point attention is again called to the fact that the basis for the rule *ejusdem generis* is as above stated. It is said in *Rohne* v. *Loomis,* 74 Minn. 200 [77 N. W. 31], that the enumeration of the inhibited means, ascending progressively and widening in its scope, is proof conclusive of the legislative intent that the last term be allowed its broad and comprehensive meaning. In the statute there under consideration the converse was true. In that

case the fact that "the legislature has specifically enumerated, in a somewhat descending order according to rank or importance, every kind of place of refreshment which was presently in mind to which they intended the act to apply" was given great and perhaps deciding weight in producing the decision that in that instance the rule *ejusdem generis* should be applied.

Again, by the same process of reasoning as that adopted in *Matter of La Societe Francaise, etc.,* 123 Cal. 525 [56 Pac. 458, 787], we may say that there appears no reason why the legislature should prohibit the solicitation of employment to produce miscarriages or abortions when that solicitation is done through notices or advertisements, but would allow such solicitation by means of personal offers. The mere statement of the proposition is sufficient to convince that the vice of the latter form of offers to engage in such evil practices is both as vicious and as dangerous to the public welfare as the former.

2. In *State* v. *Woodman,* 26 Mont. 348 [67 Pac. 1118], the supreme court of Montana held, in construing a statute which prohibited games of chance, etc., "for money, checks, credits or any representative of value, or for any property or thing whatever," that the rule *ejusdem generis* had no application; and that cigars were included under the term "or for any property or thing whatever." Referring to the rule, the court said:

"It is, however, but a rule of construction to be used as an aid in ascertaining the legislative intent, and not for the purpose of controlling the intention of a statute or of confining its operation to narrower limits than the legislature intended. Id., sec. 279. It must be used in connection with other rules of equal importance, such as that the meaning of a statute is to be gathered from the language employed in it, and that every word of it must be taken in its ordinary signification, unless it was clearly the intention of the legislature, as gathered from the context, to restrict its meaning."

Another case in which the rule was held inapplicable, because to hold otherwise would fail to carry out the purpose of the statute, is *American Ice Co.* v. *Fitzhugh,* 128 Md. 382 [Ann. Cas. 1917D, 33, 97 Atl. 999], in which it was held that horse-power was within the term "or other

power," under a statute in which the enumeration was of "cars, trucks, wagons or other vehicles, and rollers, engines, propelled by steam, gas, gasoline, electric, mechanical, or other power."

In *State* v. *Broderick*, 7 Mo. App. 19, the words construed were, "If any carrier or other bailee shall embezzle," etc. It was held that the words "or other bailee" were not to be interpreted according to the *ejusdem generis* rule; that "it is by no means a rule of universal application, and its use is to carry out, not to defeat, the legislative intent."

An act for securing estates given to charitable uses specified that "all lands, tenements, hereditaments and other estates, . . . shall be free from the payment of rates." It was held that money at interest was included in the term "other estates," and that the rule here contended for had no application. (*Atwater* v. *Inhabitants of Woodbridge*, 6 Conn. 223 [16 Am. Dec. 46].)

Among other cases holding to the same general effect are: *McReynolds* v. *People*, 230 Ill. 623 [82 N. E. 945]; *Morton* v. *Skinner*, 48 Ind. 123; *Brown's Case*, 112 Mass. 409 [17 Am. Rep. 114]; *Pein* v. *Miznerr*, 41 Ind. App. 255 [83 N. E. 784]. It will serve no good purpose to cite further authority on this point, although numerous decisions are to be found in the reports of nearly all the states upholding the proposition that the rule *ejusdem generis* will be disregarded where to give it effect would be to interfere with the carrying out of the object intended to be attained by the legislature in enacting the statute in question.

3. If notices and advertisements be construed as belonging only to the class of publication consisting of fixed representations to the eye, they completely exhaust the genus. Offers by way of notices and advertisements cover substantially every kind and form of an offer that can be made by printing, writing, billboards, electric signs, etc.; hence, we must either give the general term "or otherwise" a meaning outside of this class, or discard it as surplusage. In such cases the maxim *ejusdem generis* must yield to the more important one, that every part of a statute, and every word in it, must be upheld and given an appropriate effect. (*Misch* v. *Russell*, 136 Ill. 22 [12 L. R. A. 125, 26 N. E. 528]; *National Bank of Commerce* v. *Ripley*, 161 Mo. 126

[61 S. W. 587]; *Willis* v. *Mabon,* 48 Minn. 140 [31 Am.
St. Rep. 626, 16 L. R. A. 281, 50 N. W. 1110].)

In *American Ice Co.* v. *Fitzhugh,* 128 Md. 382 [Ann. Cas.
1917D, 33, 97 Atl. 999], heretofore mentioned, the Mary-
land court said:

"Following the doctrine of *noscitur a sociis* and the rule
*ejusdem generis* the appellant argues that the words of the
statute 'or other power' in sub-section forty-one should be
read as 'other such like,' and as including other power of
the kind and character of the several kinds enumerated.
The doctrine relied upon is, however, only applied as an
aid in ascertaining the legislative intent and is not con-
trolling where it appears that no such limitation was in-
tended.   It is said in 36 Cyc. 1121-22: 'Nor does the doc-
trine apply where the specific words of a statute signify
subjects greatly different from one another, nor where the
specific words embrace all subjects of their class, so that
the general words must bear a different meaning from the
specific words or be meaningless.'   In the case of *National
Bank of Commerce* v. *Ripley,* 161 Mo. 126 [61 S. W. 587],
the Supreme Court said: 'It is a rule of construction that
a statute should be construed so as to give effect to all its
words, if it can be done. . . . It is a corollary of the first
proposition above stated, that the statute must be construed
to give effect to all its words.   The rule itself must not
be so construed as to defeat that purpose.   While it is aimed
to preserve the meaning of particular words, it is not
intended to render meaningless the general words.   There-
fore, where the particular words exhaust the class, the gen-
eral words must be construed as embracing something
outside of that class.   If the particular words exhaust the
genus there is nothing *ejusdem generis* left, and in such case
we must give the general words a meaning outside of the
class indicated by the particular words or we must say that
they are meaningless, and thereby sacrifice the general to
preserve the particular words.   In that case the rule would
defeat its own purpose.'   Applying the well recognized
exception to the doctrine relied on to the provisions of the
act in question the kinds of power specifically mentioned
in sub-section forty-one of section 32 of said act would
seem to embrace all kinds of power other than animal power,
and if we are to give the words 'or other power' any

meaning at all there is no reason why they should not include horse power or mule power.'' (The opinion is reinforced by numerous citations of, and quotations from, other authorities.)

To the same effect is *State* v. *Grosvenor*, 149 Tenn. 158 [258 S. W. 140].

4. The following cases uphold the principle that statutes intended to carry out public policy and to remedy known evils are not to be nullified or limited by this rule: *Riggs* v. *State* 7 Lea (75 Tenn.), 475; *Kentucky* v. *Dennison*, 24 How. (U. S.) 66 [16 L. Ed. 717, see, also, Rose's U. S. Notes]; *Rawson* v. *State*, 19 Conn. 292; Black on Statutory Interpretation, p. 215.

5. Where the general provision is equally adapted to carry out the purpose of the law with the special enumeration and no apparent reason exists for not giving effect to the general provision, it will be fully applied. (*Matter of La Societe Francaise, etc.,* 123 Cal. 525 [56 Pac. 458].) This was a proceeding to change the name of La Societe Francaise to ''French Savings Bank,'' under a provision permitting such change of name by ''any religious, benevolent, literary, scientific, or other corporation.'' The court held that the general expression ''or other corporation'' was not limited to include other corporations *ejusdem generis* with those specifically enumerated. The only reason for not applying the rule to this case is contained in the closing paragraph of the opinion, as follows: ''But in this case the necessity or desirability of a change of name is as likely to occur in the case of a private corporation organized for profit as any other, and there is no reason suggested why a change of name should not be permitted to such corporations as well as to those specifically named.''

And so we have here a forcible illustration of the fact that in many of the cases where this maxim has been involved it is recognized that where the purpose of the statute is clear courts will be largely guided in construing a questioned provision by consideration of whether there is any reason why it should not be applied to the case before the court, as well as to instances specially enumerated in the statute. If no such reason exists, and the purpose of the statute is clear, cases coming within the general term of the law have usually been held to be within its provisions,

although not *ejusdem generis* with the things or persons particularly named.

6. Where the preceding enumeration is not of individual things, the rule has no application. For the sake of argument only it has been assumed that the enumeration under discussion is one to which the rule might be applied, but notices and advertisements are generic and not special terms. The forms in which notices and advertisements may exist are almost limitless in number. Any kind of notification to another is notice; any means of exploitation through the conveyance of information is advertising. One case will be sufficient to illustrate the force and application of the proposition above stated, and to show that for this reason alone the rule *ejusdem generis* cannot be applied to the instant case. In *Higler* v. *People*, 44 Mich. 299 [38 Am. Rep. 267, 6 N. W. 664], it was held in construing a statute relating to cheating by means of "any false token or writing, or by any other false pretense," that the terms "false token" and "false writing" are generic, and not specific. Even more clearly, the words "notice" and "advertisement" are not special, but general.

7. One of the most common means of advertising is by broadcasting over the radio. Another is by lectures, running the entire range from those delivered by the erudite author and traveler who educates the wondering listeners in frigid climes concerning the beauties and the balmy climatic perfection of a certain land by the Sunset Sea, to the soap-box variety who upholds to a waiting world the hidden power of some magic lotion which he declares, if given the opportunity, will grow hair on even a marble dome. In this day, when the word "advertise" is perhaps as well known as any in the English language, and when the maxim "It pays to advertise" is accepted everywhere and almost universally applied, and it is equally well known that the more complete the concealment of its identity as an advertisement, the more perfect the skill of the advertiser—who will say that the verbal announcement of one's ability, equipment, or experience in any occupation or project is not to be classed with advertising? Does not a woman who goes from house to house explaining to housewives the advantage of some new device for cleaning the kitchen sink advertise? Does not one who stands in the

doorway, or on a busy street-corner, and exhibits his wares, telling all who listen just why each article is the most perfect of its kind ever offered to the public, advertise? What more effective means of advertising could be devised than that of going from one to another, proclaiming one's skill, and offering to demonstrate it forthwith? This is exactly what witnesses said this defendant did; and so, even if the rule *ejusdem generis*, or the broader maxim, *noscitur a sociis*, be held applicable, the result is the same as though the services of these maxims in assisting in the construction of this statute be rejected as entirely unnecessary. The means employed by the defendant in offering to perform an abortion is of the same class as a notice or an advertisement. This must be true, since the only claim that a distinction exists between the form of the offer made by the defendant and an advertisement is that the former was verbal in character, and it is contended that the latter consists of printing or similar representation to the eye. But, as we have seen, advertising may be done orally. So, although the solicitation of the defendant be not regarded or classed as advertising, it was undoubtedly *ejusdem generis* with advertising.

The foregoing are the principal reasons why the term "or otherwise" used in section 317 of the Penal Code should be construed to include all other means of offering to assist in the performance of miscarriages and abortions than by notices and advertisements.

It has been said that the rule *ejusdem generis* has no special application to penal statutes. This may have been true under the common law, and may still be a correct statement in those states where the principle of that law still prevails which requires all statutes to be strictly construed in the interests of the defendant. But, wherever, as is the case in California, that provision of the law has been expressly canceled, the same rules of construction govern in penal as in civil cases, and we must accept as controlling in this matter section 4 of the Penal Code, which provides that all of the provisions of the Penal Code are to be construed according to the fair import of its terms, with a view to effect its objects and to promote justice, and that the rule of the common law above referred to has no application.

Aside from this the cases are plentiful where courts have disregarded the maxim *ejusdem generis* in criminal cases, and have given the broader final term of an enumeration its full meaning. The following, in addition to others elsewhere herein cited, are a few such cases: *State* v. *Grosvenor,* 149 Tenn. 158 [258 S. W. 140]; *State* v. *Broderick,* 7 Mo. App. 19; *Higler* v. *People,* 44 Mich. 299 [38 Am. Rep. 267, 6 N. W. 664]; *Wonner* v. *Carterville,* 142 Mo. App. 120 [125 S. W. 861]; *McReynolds* v. *People,* 230 Ill. 623 [82 N. E. 945]; *Queen* v. *Edmundson,* 2 El. & El. 77 [121 Eng. Rep. (Repr.) 30]; *State* v. *Woodman,* 26 Mont. 348 [67 Pac. 1118]; *State* v. *Williams,* 2 Strob. (14 S. C.) 474; *Rawson* v. *State,* 19 Conn. 291.

It is said that no cases are to be found where the words "or otherwise" following an enumeration of special terms have not been so limited by the rule *ejusdem generis* as to prevent the preceding particular words from being rendered surplusage.

A few instances of this character will be mentioned. It is not often that such direct authority is to be found as exists upon the construction of this term. In *State* v. *West,* 106 La. 274 [30 South. 848], the statute provided that: "Whoever shall be found guilty of attempting to rob, from the person of another, money or other property by cutting or tearing the clothes, thrusting the hand into the pockets, *or otherwise,* though he do not succeed in such attempted robbery, shall, on conviction," be punished, etc. It was held that the scope of the provision was enlarged by the use of the words "or otherwise," and that: "The intent of the word 'otherwise,' as used, evidently was to include all similar acts to those denounced, resorted to in the attempt to 'rob.' The statute includes attempts other than those expressly mentioned by the use of the word by expressly providing that attempts in a different manner and in another way than in that specifically denounced shall be subject to punishment."

In *Rawson* v. *State,* 19 Conn. 292, the supreme court of Connecticut had before it a provision of a statute regulating the sale of wines and spirituous liquors, an excerpt from which reads: "If any person or persons, except taverners, by agent; *or otherwise, shall keep any house,*" etc. In the opinion it is said: "No man can read this statute with-

out learning from its entire perusal that the controlling purpose of the legislature was to suppress tippling houses, under whatever pretense or name established, and thus prevent the facilities to intemperate and ruinous dram drinking. To reject the word 'otherwise' from the law, and thus to legalize the evil which it was the object of the statute to prevent, if perpetrated in person and not by agent, would be not only absurd, but it would involve a judicial repeal of an important part of the law itself. This word was not incautiously introduced into the statute; it was necessary to give full expression to the intent of the legislature.''

In *Fontenot* v. *Fontenot,* 157 Ala. 511 [102 South. 590], was involved an antenuptial contract which the court was required to construe in the settlement of community interests among the heirs of the contracting parties. It was provided in the contract, among other things: "The parties to this act mutually agree that the property hereinbefore described and appraised shall be excluded from the community that shall exist between them as well as all property that shall be received by either of them hereafter, either by succession, donation *or otherwise.* Also the appearers declared that they nor their property shall not (*sic*) be in any way responsible for the debts due by either prior to their intended union. That the acquests or gains shall be disposed of at the dissolution of their union as provided for in the Civil Code of Louisiana.''

It was said of this provision: "The meaning intended to be conveyed by the word 'otherwise,' in the foregoing quotation, was that property which should be acquired by either spouse with his or her separate funds, or in any other manner, under such circumstances as would make the property acquired separate, under the law, should be deemed the separate property of the spouse acquiring it, as would property received by 'succession' or 'donation,' which words precede 'otherwise.' ''

Attention need merely be called to the fact that by this construction the word ''otherwise'' was given a meaning of such scope as to render the words ''succession'' and ''donation''. unnecessary and surplusage.

Again, we have the case of *Nagle* v. *Brown,* 37 Ohio St. 7, which involved a statute providing that ''the obstructing

or encumbering by fences, buildings, structures, or otherwise, any of the public highways, or streets, or alleys of any city or village, shall be deemed nuisances," and any person injured thereby was afforded the right to collect damages. Nagle felled a large tree across the highway, which he permitted to remain for some time, and as a consequence Brown and wife were injured when driving. Suit was instituted under the statute mentioned, and it was said on appeal: "The obstruction of the highway mentioned in the original petition was clearly a nuisance within the meaning of this act, and the only question made is, was the plaintiff in error 'guilty of the same.' "

Here, also, by giving the words "or otherwise" a liberal construction, the statute would have the same scope had the preceding particular words been omitted.

*Robertson* v. *State*, 3 Tex. App. 502, held that a penal statute making it an offense to remove out of the state any personal property on which a person had given any written lien, or to sell such property, or to "otherwise dispose" thereof, with intent to defraud, included "any other method of placing the property beyond the reach of the holder of the lien with such intent." The preceding enumeration is here, again, included in the terms "otherwise dispose."

*Cramer* v. *United States*, 276 Fed. 78, is another case where the term "or otherwise" was construed in line with the foregoing decisions, and it was said that mere occupancy by the Indians of alternate sections of land was a disposition thereof under a statute providing that "when any of said alternate sections or parts of sections shall be found to have been granted, sold, reserved, occupied by homestead settlers, pre-empted, or otherwise disposed of, other lands designated as aforesaid, shall be selected . . . in lieu thereof, under the direction of the Secretary of the Interior."

In *Whelan's Appeal*, 70 Pa. 429, a statutory phrase "money, stocks *or otherwise*," was held to have been enlarged in scope by these words so as to include everything of value, whether real estate, evidence of debt, or any kind of personal property. The things previously enumerated therefore became unnecessary, and surplusage.

A New Mexico statute provided that it was the duty of the governor to fill a vacancy occurring by reason of death, resignation, *"or otherwise,"* and that the appointee "shall hold the office until his successor is elected and qualifies." It was held that the words "or otherwise" should not be construed *ejusdem generis,* but rather as extending the scope of the statute to include vacancies other than such as were created by death or resignation. (*Territory ex rel. Curran* v. *Guiterrez,* 12 N. M. 254 [78 Pac. 139].) It is apparent that the result of this construction of the words "or otherwise" is to render the particular words preceding them unnecessary.

Two California cases, construing the same section relating to public lands, are to the same effect. These are *Hambleton* v. *Duhain,* 71 Cal. 136 [11 Pac. 865], and *Daniels* v. *Gualala Mill Co.,* 77 Cal. 300 [19 Pac. 519]. The statute considered in these cases provided that "where indemnity school selections have been made and certified to the state, and said selections shall fail by reason of the land in lieu of which they were taken not being included within such final survey of a Mexican grant, *or are otherwise defective or invalid,* the same are hereby confirmed, . . . " It was held that the term "or are otherwise defective" should be given an unrestricted interpretation, so that it would include "any and all defects" in indemnity school selections which might have been made and certified to the state; hence it embraced a failure "by reason of the land . . . not being included within such final survey of a Mexican grant." Consequently the latter term becomes surplusage.

The foregoing precedents in which the exact term required to be construed in the instant case has been interpreted in the ordinary sense of the words which compose it, and allowed such meaning unrestricted by the maxim *ejusdem generis,* seem to be decisive without regard to any other considerations. It will be noted that the majority of them are cases in which a penal statute was construed.

Appellant has urged a number of other reasons as grounds for reversal, but it is not necessary to refer to them otherwise than to say that to my mind they are not well taken.